**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 16 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

LOYD W. LAFEVERS,

     Petitioner-Appellant,

v.

GARY E. GIBSON and THE
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA,

     Respondents-Appellees.

No. 98-6302

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-97-281-L)

---

Don J. Gutteridge, Jr., Oklahoma City, Oklahoma, for Petitioner-Appellant.

Jennifer B. Miller (W.A. Drew Edmondson, Attorney General, with her on the brief),
Assistant Attorney General, Oklahoma City, Oklahoma, for Respondents-Appellees.

---

Before **PORFILIO**, **BRORBY**, and **MURPHY**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

Petitioner Loyd Winford LaFevers appeals from the district court's denial of his federal habeas petition challenging both his conviction and his death sentence. Despite having decisively denied relief, the district court granted a certificate of appealability on all issues raised by the petitioner believing petitioner's sentence of death required that action. On appeal, Mr. LaFevers raises a number of discrete issues which we have considered in full. Finding no error, we affirm the judgment of the district court.

## I.     BACKGROUND

Petitioner and his co-defendant were convicted in state court of kidnapping and murdering eighty-four year old Addie Hawley. The Oklahoma Court of Criminal Appeals recounted the facts of the crime:

> On June 24, 1985, [LaFevers] and co-defendant [Randall] Cannon decided to steal a car after [LaFevers'] car broke down in a northwest Oklahoma City neighborhood. After selecting a house in the neighborhood, the two men forced their way into the home of eighty-four year old Addie Hawley. They ransacked her home, taking eight dollars from her purse, along with the keys to her car and the garage door opener. The two took her out of the house and into the car. Cannon, who was driving the car, drove for just over a mile before pulling over so that they could put Hawley in the trunk.
>
> The two men drove to a convenience store where they bought a two liter bottle of orange soda. After drinking some of the soda, they poured the rest out and filled the bottle with gasoline. [LaFevers] directed Cannon to drive to a secluded area where he removed Hawley from the trunk of the car. Although there was evidence presented at trial that indicated that Hawley was raped, neither defendant admitted having committed rape or sodomy. Each man indicated in his pretrial confession to police and during his testimony at trial that the other man had committed the sexual offenses while he remained as a lookout.

After the completion of the sex acts, one of the two men, again each blamed the other, poured gasoline from the orange soda bottle on Hawley and set her on fire. They drove the car a short distance away and also set it on fire.

Rescue personnel were called to the scene soon after the fires were set. Although Hawley had been burned over sixty percent of her body, she was still alive. She had suffered a blunt injury to the forehead and had two black eyes along with multiple cuts and bruises. She died a short time after being taken to the hospital.

*LaFevers v. State*, 819 P.2d 1362, 1364 (Okla. Crim. App. 1991) (footnote omitted).

Mr. LaFevers and Mr. Cannon were tried jointly in March of 1986. A jury convicted both defendants of first-degree murder, burglary in the first degree, robbery in the first degree, kidnapping, larceny of a motor vehicle, arson in the third degree, rape in the first degree, and anal sodomy. The state trial court sentenced Mr. LaFevers to death for the first-degree murder charge and to terms of years on the remaining counts. On direct appeal, however, the Oklahoma Court of Criminal Appeals reversed Mr. LaFevers' convictions on the counts of first-degree murder, arson in the third degree, rape in the first degree, and anal sodomy. The court held the defendants had mutually antagonistic defenses on those counts and the failure to grant Mr. LaFevers a severance constituted reversible error. *See id.*

Mr. LaFevers was retried soon thereafter. The second jury convicted him on counts of first-degree murder and arson in the third degree but acquitted him on charges of rape in the first degree and anal sodomy. During the penalty phase, the jury found the existence of three aggravating circumstances: (1) the murder was especially heinous,

atrocious, or cruel; (2) there was a probability that Mr. LaFevers would commit criminal acts of violence that would constitute a continuing threat to society; and (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. The trial court sentenced Mr. LaFevers to death on the murder count and forty years on the arson count. The Oklahoma Court of Criminal Appeals affirmed on direct appeal, *see LaFevers v. State*, 897 P.2d 292 (Okla. Crim. App. 1995), and denied Mr. LaFevers' application for post-conviction relief, *see LaFevers v. State*, 934 P.2d 356 (Okla. Crim. App. 1997).

Subsequently, Mr. LaFevers filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Oklahoma. The district court denied the petition and then denied a subsequent Rule 59(e) motion for reconsideration. The petitioner timely filed a notice of appeal. On August 6, 1998, the district court granted a certificate of appealability on all claims raised in the petition.

## II.    JURISDICTIONAL STATEMENT

As a preliminary matter, we must note the district court granted the certificate of appealability on an erroneous legal conclusion. The court reasoned:

> This Court is in receipt of the Tenth Circuit Court of Appeals Order dated June 4, 1998, in the *Roberts v. Ward* case, Appellate Case No. 98-6066. The *Roberts* Order provides, in pertinent part:
>
> > [t]his is a death penalty state habeas case with numerous claims of perceived error rising to constitutional dimension. In order to ensure that these issues receive a thorough and thoughtful review on appeal, assisted by complete briefing

- 4 -

from both parties, we hereby grant the application for certificate of appealability as to all issues enumerated in appellant's application for certificate of appealability.

It appears from this ruling that the Tenth Circuit Court of Appeals has held the statute, 28 U.S.C. § 2253(c), does not apply to appeals arising from cases involving a death sentence.

Based upon the directive contained in the ***Roberts*** Order, this Court hereby GRANTS Petitioner's Application for Certificate of Appealability as to all claims enumerated therein.

Unfortunately, this interpretation of our ruling in one case and of the requirements of section 2253(c) is mistaken.

We take this opportunity to point out to the district courts nothing in section 2253(c) suggests it is inapplicable to capital habeas cases. Indeed, it is in those very cases in which the deft scrutiny of the district court is most essential to the appellate process. Reading section 2253(c) to suggest otherwise deprives it of all purpose and meaning and surely obverts the legislative will of Congress. It is equally important, however, that district courts do not proceed to the other end of the jurisdictional spectrum and make a blanket denial of a certificate of appealability unless the court is convinced there is nothing in the petition that is of debatable constitutional magnitude. In each instance, the district court must analyze a capital case as it would any other section 2254 petition or section 2255 motion, rendering judgment as Congress has prescribed. Nothing we stated in ***Roberts*** was intended to imply otherwise.

Now that the district court has made appealable all the issues in this case by its blanket order, we must review the merits of each claim. *Cf. Nowakowski v. Maroney*, 386 U.S. 542, 543, 87 S. Ct. 1197, 1199 (1967) ("[W]hen a district judge grants such a certificate [of probable cause], the court of appeals must . . . proceed to a disposition of the appeal in accord with its ordinary procedure."); *Chaney v. Brown*, 712 F.2d 441, 442 (10th Cir. 1983) ("The certificate of probable cause for an appeal having been granted [by the district court], the appellant must 'be afforded an opportunity to address the merits, and the court of appeals is obligated to decide the merits of the appeal.'" (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 3395 (1983)). We shall proceed to that task.

## III. STANDARDS OF REVIEW

In reviewing a denial of a petition for a writ of habeas corpus, we are generally subject to two different modes of analysis. If the claim was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance, we review the district court's conclusions of law *de novo* and its findings of fact, if any, for clear error. *See Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998). But when reviewing the merits of a claim already decided by the state courts, we are bound to deny relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" if: (1) the state court decision is in square conflict with Supreme Court precedent which is controlling on law and fact or (2) if its decision rests upon an objectively unreasonable application of Supreme Court precedent to new facts. Quite simply, the "AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations." *Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

Given these parameters for our review, we shall examine the issues under four general categories: (1) claims clearly foreclosed to federal habeas corpus review under 28 U.S.C. § 2254(d); (2) claims governed by prior decisions of this court; (3) claims barred by procedural default;[1] and (4) claims heard in the first instance by the district court which are not barred by procedural default.

## IV.   DISCUSSION

### A.  CLAIMS FORECLOSED BY 28 U.S.C. § 2254(d)

The claims referred to in this section have been already decided by state courts. Given that petitioner does not question the state court's determination of the underlying

---

[1]We believe a certificate of appealability should not have been granted on any of these first three categories of claims because they are not debatable.

facts, we are bound to deny relief on his claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d). Our discussion proceeds with this principle in mind.

> **1.** **Did the State Trial Court Violate the U.S. Constitution by Refusing to Suppress Statements that Followed Mr. LaFevers' Alleged Invocation of Counsel?**

Mr. LaFevers contends the state trial court should have suppressed statements he claims were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966). Mr. LaFevers was arrested at about 8:00 AM on June 26, 1985. A police officer began interrogating him shortly thereafter and advised him of his *Miranda* rights. Mr. LaFevers waived his rights and answered questions for approximately fifteen minutes. The police then asked the defendant if he would give the police "body" samples. The following exchange occurred:

| | |
|---|---|
| Officer: | Would you be willing to uh, give us hair samples, blood sample [sic]. Anything that we might need for our investigation? |
| LaFevers: | Yeah, just as soon as I talk to a lawyer. |
| Officer: | Okay, you have a right to do that. |
| LaFevers: | I don't, you'll have to get me one cause I ain't got one. |
| Officer: | Okay. That's right, now are you wanting the lawyer just, just for the decision on that . . . before you talk to me? |

- 8 -

| | |
|---|---|
| LaFevers: | I just need to talk to one. |
| Officer: | Okay. Are you wanting to terminate our interview now, is that what you are telling me? |
| LaFevers: | No, you can leave this [tape recorder] on. [Inaudible][2] |
| Officer: | That's what I'm saying, are you wanting to stop it now since you know you told me you wanted a lawyer? |
| LaFevers: | Well, when can you get me a lawyer? |
| Officer: | That'll be up to the courts, they'll get you one, ya know, that's no problem. I just need to know, you know if you're through talking to us or if you want to continue to talk? |
| LaFevers: | No, I'll talk to you. |

Mr. LaFevers then made incriminating statements. He argues those statements must be

suppressed because they were obtained after he invoked his right to counsel.

The Oklahoma Court of Criminal Appeals considered and rejected this argument.

The court stated:

> After a knowing and voluntary waiver of **Miranda** rights, law enforcement officers may continue questioning through equivocal statements until a suspect clearly requests an attorney. Here, LaFevers' statements do not clearly indicate whether LaFevers wanted an attorney before he agreed to give body samples or simply wanted to stop talking altogether. Any ordinary person might find the exchange ambiguous, especially given LaFevers' repeated mention of a lawyer coupled with his refusal to say he wanted to stop the interview. [Officer] Mitchell followed the only reasonable course open to him. He avoided any substantive interrogation

---

[2]Mr. LaFevers contends he then said: "But, I need to talk to a lawyer." A review of the record fails to support that contention.

until the problem was clarified and questioned LaFevers only regarding his willingness to talk and wish for an attorney. The record does not support any suggestion that Mitchell phrased his requests to urge LaFevers to talk, or that he gave LaFevers any impermissible advice. Contrary to the suggestion in LaFevers' brief, Mitchell did not tell LaFevers he would not receive counsel. LaFevers correctly contends that his final statement, "No, I'll talk to you," did not create any ambiguity in his previous statements. That statement resolved the considerable ambiguity to that point.

*LaFevers*, 897 P.2d at 299-300 (footnote omitted).

Contrary to Mr. LaFevers' assertions, the approach taken by the Oklahoma Court of Criminal Appeals is entirely consistent with federal law, as determined by the United States Supreme Court. In ***Davis v. United States***, 512 U.S. 452, 114 S. Ct. 2350 (1994), the Supreme Court stated:

> But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning. ***See*** [***McNeil v. Wisconsin***, 501 U.S. 171, 178, 111 S. Ct. 2204, 2209 (1991)] ("[T]he *likelihood* that a suspect would wish counsel to be present is not the test for applicability of ***Edwards***"); ***Edwards v. Arizona***, [451 U.S. 477, 485, 101 S. Ct. 1880, 1885 (1981)] (impermissible for authorities "to reinterrogate an accused in custody if he has *clearly asserted* his right to counsel") (emphasis added).
>
> Rather, the suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." ***Smith v. Illinois***, [469 U.S. 91, 97-98, 105 S. Ct. 490, 494 (1984)] (brackets and internal quotation marks omitted). Although a suspect need not "speak with the discrimination of an Oxford don," *post*, at 2364 (SOUTER, J., concurring in judgment), he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, ***Edwards*** does not require that the officers stop questioning the suspect. ***See***

*Moran v. Burbine*, 475 U.S. 412, 433, n. 4, 106 S.Ct. 1135, 1147, n. 4, 89 L.Ed.2d 410 (1986) ("[T]he interrogation must cease until an attorney is present *only* [i]f the individual states that he wants an attorney") (citations and internal quotation marks omitted).

*Davis*, 512 U.S. at 459, 114 S. Ct. at 2355.

When Mr. LaFevers invoked his right to counsel it was unclear whether he just wanted an attorney to discuss the body samples or whether he wanted an attorney before answering any other questions. In light of this confusion, the police officer did not ask any substantive questions about the crime until after clarifying whether and why Mr. LaFevers actually wanted an attorney. We cannot conclude that the Oklahoma court's decision rests upon an objectively unreasonable application of Supreme Court precedent to the facts of Mr. LaFevers' case.

**2. Did the State Trial Court Violate the Confrontation Clause When it Read Into the Record of the Second Trial the Testimony of David Hawkins?**

Mr. LaFevers contends the state trial court violated the Confrontation Clause of the U.S. Constitution when it allowed the prosecution to read the first-trial testimony of David Hawkins into evidence during the second trial. Hawkins, an inmate who had shared a cell with Mr. LaFevers, was one of the principal prosecution witnesses in the first trial. Hawkins testified that Mr. LaFevers had confessed to assaulting, raping, and burning Ms. Hawley. He further stated Mr. LaFevers was boastful and had decided to kill Ms. Hawley so she would be unable to identify him. Mr. LaFevers' counsel subjected Hawkins' testimony to extensive cross-examination, including efforts to impeach the

witness. At some point after the first trial, however, Hawkins recanted his testimony, charging that the district attorney and his assistants had kidnapped him and suborned perjury.

During the second trial, the state again called Hawkins to testify for the prosecution. Hawkins refused to testify unless he could first consult with an attorney. He took the position his statements might be inculpatory and might be used against him in the future. The state trial court refused to appoint an attorney; therefore, Hawkins took the stand but refused to answer the questions of the prosecutor. The court then stopped the proceedings, declared Hawkins an "unavailable" witness pursuant to 12 Okla. Stat. Ann. § 2804(A)(2), and ordered Hawkins' testimony from the first trial to be read into evidence. Mr. LaFevers contends the state trial court violated his constitutional right to confront Hawkins during the second trial when it allowed the prosecution to read Hawkins' first-trial testimony into evidence. The Oklahoma Court of Criminal Appeals considered and rejected this argument, stating:

> At an in-camera hearing during [the second] trial Hawkins stated he wished to consult an attorney before speaking under oath, as he felt his statements might be inculpatory and might be used against him in the future. . . . The trial court thoroughly questioned Hawkins and established that he knew why he was there, and, while he believed he would be willing to testify if he were represented by counsel, he would not make any statements under oath without such representation. The trial court refused to appoint counsel and ordered Hawkins to testify. Hawkins agreed, but took the Fifth at the first question, saying, "At this time, ma'am, I will have to exercise my Fifth Amendment right to silence." The trial court then stopped the proceedings and directly ordered Hawkins to testify again; after a brief discussion the following exchange took place:

Trial Court: "I want to be sure that you know what you're doing, that you don't want to answer any questions here because, in your opinion, if you do answer, it might tend to incriminate you; is that right?"

Hawkins: "Yes, sir, that is correct."

Trial Court: "The Court finds that this witness is unavailable."

The history above clearly shows that Hawkins was declared unavailable under 12 O.S. 1991, § 2804(A)(2), refusal to obey a court order to testify, rather than § 2804(A)(1), refusal on claim of valid privilege, as LaFevers contends. The trial court never found that Hawkins was unavailable because he had claimed a valid Fifth Amendment privilege; Hawkins was unavailable because he directly, twice, disobeyed a court order to testify. LaFevers argues that Hawkins was willing to testify in the case but just wanted to check with a lawyer first. This is not supported by the record, in which Hawkins flatly refuses to testify. His statement that he might if he could talk to an attorney is speculative at best, not an expression of intent.

. . . .

LaFevers also argues his Sixth Amendment right to confrontation and cross-examination was violated. Although Hawkins was subject to extensive cross-examination and impeachment in the first trial, LaFevers was denied the chance to question him about his recantation of that testimony. LaFevers was able to enter into evidence pleadings in which Hawkins recanted his testimony, along with the subsequent several felony convictions he received. LaFevers used the recantation and convictions in argument, and the jury had this evidence to consider, along with testimony of several witnesses.

LaFevers argues any error in admitting this testimony cannot be harmless as without this testimony the evidence was insufficient to convict LaFevers of murder or arson. On the contrary, other evidence existed regarding both those crimes. LaFevers was not convicted of rape and sodomy, the only charges which were completely unsupported by any other evidence. This suggests that the jury did not rely on Hawkins' testimony

- 13 -

alone if at all. LaFevers could have been convicted had the jury ignored Hawkins' testimony, and this proposition must fail.

*LaFevers*, 897 P.2d at 302-04 (footnote omitted).

In our view, the proceedings were not as clear as the state court opined, but nevertheless, we believe the approach taken by the Oklahoma Court of Criminal Appeals was not unreasonable. The Supreme Court has stated:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980).

It may be arguable whether the hearsay exception applied in this case, 12 Okla. Stat. Ann. § 2804(A)(2), is a "firmly rooted hearsay exception." Thus, this issue rises to a constitutional level only if there was no showing of particularized guarantees of trustworthiness. *See Earnest v. Dorsey*, 87 F.3d 1123, 1131 (10th Cir. 1996).

Such a showing has been made in this case, however. Hawkins' testimony in the first trial was subject to extensive cross-examination and impeachment efforts. The cross-examination of the declarant in a prior proceeding is typically sufficient to demonstrate reliability. *See Ohio*, 448 U.S. at 70, 100 S. Ct. at 2541; *Mancusi v. Stubbs*, 408 U.S. 204, 213-16, 92 S. Ct. 2308, 2313-15 (1972). Furthermore, although the recantation may be regarded as an indicator of unreliability, Mr. LaFevers' counsel had an

- 14 -

opportunity at the second trial to use the recantation as further means of impeaching the credibility of Hawkins. After Hawkins' testimony was read to the jury, defense counsel introduced into evidence pleadings in which Hawkins made his recantation. Counsel's efforts during the second trial arguably averted constitutional error or, at the very least, made any error harmless.

3. **Did Mr. LaFevers' Prosecution Under the Felony-Murder Rule in his Second Trial, with Kidnaping as the Predicate Felony, Violate the Double Jeopardy Clause of the U.S. Constitution?**

Petitioner asserts his prosecution under the felony-murder rule in his second trial, with kidnapping as the predicate felony, violated the Double Jeopardy Clause. The gist of this complaint is that the felony-murder theory was constitutionally infirm because he had already been convicted of kidnapping in the first trial and that conviction had been affirmed on appeal. The Oklahoma Court of Criminal Appeals considered and rejected this argument. The court stated:

> LaFevers here correctly complains that he should not have been charged with the alternative count of felony murder, since the predicate felony relied on was the kidnap charge of which he was convicted in 1986 and which was affirmed by this Court in *LaFevers 1*. The State essentially concedes this point, as they should. However, the basis for this prohibition is the principle that, where two alternatives exist and only one is constitutional or proper, a verdict cannot be upheld because the jury may have relied on an invalid alternative to reach a guilty verdict. That is not the case here. Fortunately the jury received a verdict form for each alternative, and we know absolutely that LaFevers was convicted of malice murder, not felony murder.
>
> . . . .

- 15 -

LaFevers also argues that his prosecution alone caused prejudice enough for reversal, apparently on the grounds that he was subjected to multiple punishment and that the State had the chance to rehearse its presentation and make it more effective. It is true that, but for the fortuitous separate verdict forms, he would have been subjected to multiple punishments. However, that does not end our inquiry. The issues are subject to a harmless error analysis. Even if LaFevers were charged only with malice murder on retrial, the evidence regarding the kidnapping would have come in under res gestae. Otherwise, the jury would be told LaFevers burglarized and robbed Hawley and she was found beaten and burned in a field with her burning car nearby--leaving large and unnecessary gaps in the jury's understanding of the crime. The State did not unduly emphasize the felony murder alternative in argument. This Court can find, beyond a reasonable doubt, that the erroneous alternative of felony murder did not contribute to the guilty verdict . . . .

*LaFevers*, 897 P.2d at 301-02 (footnote omitted)

We believe the Oklahoma court's decision on harmless error was reasonable.

Contrary to Mr. LaFevers' assertions, every Supreme Court case to have vacated

convictions in these types of cases dealt with general verdict forms, where it was

impossible to tell what theory the jury used to convict. ***See, e.g., Leary v. United States***,

395 U.S. 6, 89 S. Ct. 1532 (1969); ***Stromberg v. People of State of Cal.***, 283 U.S. 359, 51

S. Ct. 532 (1931). Here, it was clear from the special verdict form that the jury convicted

Mr. LaFevers of malice aforethought murder.

**4. Did the State Trial Court Violate the U.S. Constitution When it Failed to Sua Sponte Instruct the Jury on the Meaning of the Phrase "Reasonable Doubt"?**

Mr. LaFevers postulates the state trial court violated his constitutional rights when

it failed to sua sponte instruct the jury on the meaning of the phrase "reasonable doubt."

The Oklahoma Court of Criminal Appeals considered and rejected this argument. The

court stated:

> LaFevers contends in Proposition XI that the trial court committed
> fundamental error when it did not provide the jury with an instruction
> defining the term "reasonable doubt." LaFevers did not request such an
> instruction at trial. LaFevers admits that this Court has consistently held
> that "reasonable doubt" is self-explanatory and any instruction on it is error,
> but argues that, by analogy, the term should be defined just as terms of an
> offense are defined for a jury. LaFevers incorrectly claims that if the term
> is defined the definition must be correct, so failure to define the term is
> fundamental error. This does not follow logically from the premise that an
> instruction given to the jury must be accurate. LaFevers offers no
> persuasive authority to suggest that this Court should reconsider its previous
> decisions. This proposition is denied.

*LaFevers*, 897 P.2d at 305-06 (footnotes omitted).

The approach taken by the Oklahoma Court of Criminal Appeals is entirely

consistent with federal law, as determined by the United States Supreme Court. "[T]he

Constitution neither prohibits trial courts from defining reasonable doubt nor requires

them to do so as a matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S. Ct. 1239,

1243 (1994). Rather, "so long as the court instructs the jury on the necessity that the

defendant's guilt be proved beyond a reasonable doubt the Constitution does not require

that any particular form of words be used in advising the jury of the government's burden

of proof." *Id.* at 5, 114 S. Ct. at 1243 (citations omitted).

    **5.**     **Was Trial Counsel Ineffective During the Penalty Phase Because he Failed to Present Evidence of Mr. LaFevers' Drug Use and Abuse?**

Mr. LaFevers next argues his trial counsel's performance during the penalty phase of his trial was constitutionally defective because he failed to present evidence of Mr. LaFevers' drug use and abuse. The Oklahoma Court of Criminal Appeals considered and rejected this claim, stating:

> LaFevers claims that trial counsel failed to advocate his cause by failing to present relevant mitigating evidence that probably would have altered the outcome of the case. LaFevers contends counsel had (1) available evidence that he was suffering from drug-induced psychosis at the time of the crime, along with (2) drug-abuse and psychological profiles taken about the time of the second trial, which could have been presented in either first or second stage as mitigating evidence. Upon examination these allegations fail to meet the standard set forth above.

> LaFevers argues "ample" evidence showed he suffered from drug-induced psychosis. The only evidence introduced at trial which supports this claim is Hawkins' testimony that LaFevers said he'd been on crystal speed for three or four days before the crime. LaFevers' contention that he told trial counsel he'd been using methamphetamines, quaaludes, and marijuana, and had not slept for a week, is not reflected in the record before this Court. *LaFevers 1* notes that before the first trial LaFevers requested a psychiatrist to testify regarding the effects of PCP on his mental state, but determines merely that he completely failed to show sanity would be an issue at trial and thus was not entitled to have a psychiatrist appointed. LaFevers fails again to suggest any such showing here, and certainly on this record counsel was not ineffective for not requesting such an appointment. Even if LaFevers could show any evidence supporting such a claim his cited cases mention but do not turn on drug-induced psychosis and do not support his argument.

> LaFevers appends two documents to his brief to support this proposition. . . . [¶] Despite LaFevers' arguments, it is impossible to read these exhibits and believe there is any reasonable probability they would have affected the outcome of the case. . . . Although it might have been prudent to present [the documents] in mitigation, counsel called seven witnesses in the first stage and thirteen witnesses in the second stage, including LaFevers' mother and son. The record shows counsel filed

- 18 -

forty-five motions, two formal objections, and a special "plea" of former jeopardy after formal arraignment and before trial. Counsel made numerous objections and motions throughout trial. LaFevers was acquitted of the charged sex offenses. This Court cannot say counsel's performance was so deficient as to be professionally unreasonable or affect the jury's judgment.

*LaFevers*, 897 P.2d at 306-07 (footnote omitted).

Mr. LaFevers has presented *no* argument to the district court or to us demonstrating that the state court's decision was so clearly incorrect. Given this failure to demonstrate, or to even attempt to demonstrate, any error, we find the claim foreclosed.

## B. CLAIMS GOVERNED BY PRIOR DECISIONS OF THIS COURT

**1.    Did the State Trial Court Violate the U.S. Constitution When it Declined a Request to Instruct Jurors That They Could Return a Verdict of Life, Instead of a Death Sentence, Even if They Found the Aggravating Circumstances to Have Outweighed the Mitigating Circumstances?**

Mr. LaFevers argues the state trial court erred when it declined a request to instruct jurors that they could return a verdict of life, with or without parole, instead of a death sentence, even if they found the aggravating circumstances outweighed the mitigating circumstances. Our recent decision in ***Duvall v. Reynolds***, 139 F.3d 768 (10th Cir. 1998), governs this issue. There, we stated:

> Mr. Duvall contends that his Eighth and Fourteenth Amendment rights were violated because the district court failed to instruct the jury that it had the option to return a life sentence regardless of its finding that the aggravating circumstances outweighed the mitigating circumstances. Under Oklahoma law, a jury is free to decline to impose the death penalty even if it finds that the aggravating circumstances outweigh the mitigating circumstances. ***See Burrows v. State***, 640 P.2d 533, 544 (Okla. Crim. App.1982). Nonetheless, the Constitution does not demand "that the state must affirmatively

- 19 -

structure in a particular way the manner in which juries consider mitigating evidence." ***Buchanan v. Angelone***, [522 U.S. 269, ___,] 118 S. Ct. 757, 761, 139 L. Ed. 2d 702 (1998). Instead, "the state may shape and structure the jury's consideration of mitigation so long as it does not preclude the jury from giving effect to any relevant mitigating evidence. . . . [T]he standard for determining whether jury instructions satisfy these principles [is] 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of relevant evidence.'" ***Id.*** (quoting ***Boyde v. California***, 494 U.S. 370, 380, 110 S. Ct. 1190, 1198, 108 L. Ed. 2d 316 (1990)).

In accordance with these principles, Instruction No. 6 provided:

Should you unanimously find that one or more aggravating circumstances existed beyond a reasonable doubt, *you would be authorized to consider* imposing a sentence of death.

If you do not unanimously find beyond a reasonable doubt that one or more of the aggravating circumstances existed, *you are prohibited from considering* the Death Penalty. In that event, the sentence must be Imprisonment for Life.

. . . .

We hold that Instruction No. 6 adequately afforded the jury an opportunity to consider mitigating evidence. The trial court did not instruct the jury that they must assess death if they found the aggravating circumstances outweighed the mitigating circumstances. Instead, the trial court instructed the jury that they were "authorized to consider imposing a sentence of death" upon the finding of an aggravating circumstance. Because the instruction did not prevent consideration of mitigating circumstances, and because no juror would have understood it to do so, the instruction is constitutionally permissible. ***See Buchanan***, [522 U.S. 269 at ___,] 118 S. Ct. at 761 (approving instruction stating that when an aggravating circumstance is present beyond a reasonable doubt, "then you may fix the punishment at death.") (emphasis added).

. . . We are confident that "the instruction adequately apprised the jury of its option not to recommend the death sentence." ***Moore v. Butler***, 819 F.2d 517, 521 (5th Cir. 1987) (approving instruction that informed the jury that it "may

- 20 -

consider" imposing the death penalty upon finding an aggravating circumstance beyond a reasonable doubt). In sum, we hold that "the instructions sufficiently preserved, under the Constitution, the jury's responsibility and authority to exercise its discretion in the sentencing determination." *Coleman v. Saffle*, 869 F.2d 1377, 1394 (10th Cir. 1989).

*Duvall*, 139 F.3d at 789-91 (footnote omitted).

Having found no material difference between the instructions given in Mr. LaFevers' case and those given in *Duvall*, we must reject Mr. LaFevers' argument.

2.     **Did the State Trial Court Violate the U.S. Constitution When it Rejected a Request to Instruct Jurors that Mitigating Circumstances Need Not be Found Unanimously?**

In a related claim, Mr. LaFevers argues the state trial court committed constitutional error when it failed to instruct the jury that mitigating circumstances need not be found unanimously. Once again, *Duvall* governs this argument. We stated:

> Mr. Duvall asserts that his Eighth and Fourteenth Amendment rights were violated because the jury instructions did not inform the jury that unanimous agreement upon the existence of a mitigating circumstance is not required before each juror can consider such evidence. Relying primarily on *McKoy v. North Carolina*, 494 U.S. 433, 110 S. Ct. 1227, 108 L. Ed. 2d 369 (1990), and *Mills v. Maryland*, 486 U.S. 367, 108 S. Ct. 1860, 100 L. Ed. 2d 384 (1988), Mr. Duvall contends that the jury instructions erroneously implied that the jury was required to find a mitigating circumstance unanimously before each juror could consider the mitigating circumstance in determining whether to impose the death penalty.
>
>        . . . .
>
>        A trial court need not, however, expressly instruct a capital sentencing jury that unanimity is not required before each juror can consider a particular mitigating circumstance. *See Buchanan v. Angelone*, [522 U.S. 269, ___,] 118 S. Ct. 757, 761, 139 L. Ed. 2d 702 (1998) ("[T]he State

may shape and structure the jury's consideration of mitigation so long as it does not preclude the jury from giving effect to any relevant mitigating evidence."). Instead, as noted above, our standard for determining whether jury instructions violate the constitution is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380, 110 S. Ct. 1190, 1198, 108 L. Ed. 2d 316 (1990), quoted in *Buchanan*, [522 U.S. at ___,] 118 S. Ct. at 761; *accord Davis v. Executive Dir. of Dept. of Corrections*, 100 F.3d 750, 775 (1996) (10th Cir. 1996).

The instructions [given in this case] consistently require unanimity only on the jury's finding of aggravating circumstances. Instruction Nos. 6 and 10 require the jury to "unanimously find" aggravating circumstances. In contrast, none of the instructions involving mitigating circumstances impose an express or implied unanimity requirement on the jury's consideration of mitigating evidence. Instruction Nos. 7, 8, and 10 respectively required the jury to "determin[e]," "decide[ ]," and "find" whether mitigating circumstances existed without any reference to unanimity. Although Instruction No. 9 requires the jury to find unanimously that the aggravating circumstances outweigh any mitigating circumstances before imposing the death penalty, the unanimity requirement there refers only to the jury's balancing of aggravating versus mitigating circumstances, and not to the initial determination of whether mitigating circumstances exist in the first place. Thus, Instruction No. 9 is consistent with the instructions describing the proper evaluation of mitigating evidence.

We hold that there is no reasonable likelihood that the jury applied these instructions in a way that required them to agree unanimously upon the existence of a mitigating circumstance before considering it.

*Duvall*, 139 F.3d at 791-92 (footnote omitted).

There is no material difference between the instructions given in Mr. LaFevers' case and those given in *Duvall*. Accordingly, the latter binds us.

3.      **Is the "Continuing Threat" Aggravator Unconstitutionally Vague or Overbroad?**

Mr. LaFevers argues Oklahoma's "continuing threat to society" aggravator is both unconstitutionally vague and overbroad. Nonetheless, our decisions in ***Ross v. Ward***, 165 F.3d 793 (10th Cir. 1999), ***Castro v. Ward***, 138 F.3d 810 (10th Cir. 1998), and ***Nguyen v. Reynolds***, 131 F.3d 1340 (10th Cir. 1997), mandate rejection of this argument. As we summarized in ***Ross***:

> Mr. Ross contends that the "continuing threat" aggravating circumstance, as applied in Oklahoma, is unconstitutionally vague and overbroad [and] is not sufficiently limited in scope because it can exist as to almost any murder . . . . In support of this claim, he relies on the reasoning of ***Williamson v. Reynolds***, 904 F. Supp. 1529 (E.D. Okla.1995), where a federal district court ruled that the continuing threat aggravating circumstance was unconstitutionally vague and overbroad as interpreted and applied in Oklahoma.
>
> Recently, this court has rejected the reasoning of ***Williamson*** and held that the continuing threat aggravator as applied in the Oklahoma sentencing scheme does not violate the Eighth Amendment. ***See Castro v. Ward***, 138 F.3d 810, 816 (10th Cir.), ***cert. denied***, ___ U.S. ___, 119 S. Ct. 422, 142 L. Ed. 2d 343 (1998); ***Nguyen v. Reynolds***, 131 F.3d 1340, 1352-54 (10th Cir. 1997), ***cert. denied***, ___ U.S. ___, 119 S. Ct. 128, 142 L. Ed. 2d 103 (1998). This court specifically found that the continuing threat aggravator is not "applicable to every defendant convicted of murder in the first degree." ***See Nguyen***, 131 F.3d at 1354. Although Mr. Ross asks us not to follow this reasoning, we are bound by these decisions. ***See United States v. Foster***, 104 F.3d 1228, 1229 (10th Cir.1997).

***Ross***, 165 F.3d at 800. We too adhere to our circuit's precedent.

**4.      Is the "Especially Heinous, Atrocious or Cruel" Aggravator Unconstitutionally Vague?**

Oklahoma's "especially heinous, atrocious or cruel" aggravator is unconstitutionally vague as applied, petitioner urges. This claim fails because of ***Duvall.***

There, in analyzing jury instructions identical to those given in Mr. LaFevers' case, we

stated:

> Mr. Duvall next challenges the "especially heinous, atrocious, or cruel" aggravating circumstance under the Eighth and Fourteenth Amendments. He asserts that Instruction No. 5, which defines the aggravating circumstance, is unconstitutionally vague as applied. Instruction No. 5 provides:
>
>> As used in these Instructions, the term "heinous" means extremely wicked or shockingly evil; "atrocious" means outrageously wicked and vile; "cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the suffering of others.
>>
>> The phrase "especially heinous, atrocious or cruel" is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse.
>>
>> . . . .
>
> . . . [I]n *Cartwright v. Maynard*, 822 F.2d 1477, 1478-79 (10th Cir. 1987) (en banc), we held that an "especially heinous, atrocious, or cruel" aggravator was unconstitutional because it failed to channel the jury's discretion as required by the Eighth Amendment. Affirming our decision, the Supreme Court reasoned that without precise explanatory language to guide the sentencing decision, "an ordinary person could honestly believe that every unjustified, intentional taking of human life is 'especially heinous.'" *Maynard v. Cartwright*, 486 U.S. 356, 364, 108 S. Ct. 1853, 1859, 100 L. Ed. 2d 372 (1988).
>
> In *Cartwright*, the Supreme Court noted that Oklahoma could have cured the unconstitutionally vague aggravator by adopting a narrowing construction. *Id.* at 364-65. In particular, the Court suggested that if the Oklahoma courts had construed the aggravating circumstance to require "torture or serious physical abuse," such a construction "would be constitutionally acceptable." *Id.*; *see also Walton v. Arizona*, 497 U.S. 639, 654-55, 110 S. Ct. 3047, 3057-58, 111 L. Ed. 2d 511 (1990).

- 24 -

In response to the ***Cartwright*** decision, the Oklahoma Court of Criminal Appeals adopted a limiting construction of the "especially heinous, atrocious, or cruel" aggravator, mandating that the murder involve "torture of the victim or serious physical abuse." ***See Stouffer v. State***, 742 P.2d 562, 563 (Okla. Crim. App. 1987). In ***Hatch v. State***, 58 F.3d 1447, 1468-69 (10th Cir. 1995), we agreed that such a narrowing interpretation of the "especially heinous, atrocious, or cruel" aggravator was constitutionally permissible.

Despite our holding in ***Hatch***, Mr. Duvall argues that the "especially heinous, atrocious, or cruel" aggravator is unconstitutionally vague. He asserts that the Oklahoma Court of Criminal Appeals has applied this factor with "remarkable inconsistency." Thus, he contends that as applied, the aggravating circumstance does not "'genuinely narrow the class of persons eligible for the death penalty.'" ***Lowenfield v. Phelps***, 484 U.S. 231, 244, 108 S. Ct. 546, 554, 98 L. Ed. 2d 568 (1988) (quoting ***Zant v. Stephens***, 462 U.S. 862, 877, 103 S. Ct. 2733, 2742, 77 L. Ed. 2d 235 (1983)).

We disagree with Mr. Duvall's characterization of the case law from the Oklahoma Court of Criminal Appeals. In our view, the court has consistently interpreted the "especially heinous, atrocious, or cruel" aggravator to require "torture" and "serious physical abuse" as evidenced by proof of conscious physical suffering. . . . In addition, that court has applied its standard consistently in evaluating whether or not the evidence justifies a finding of this aggravator.

***Duvall***, 139 F.3d at 792-93 (citations and footnotes omitted); ***see also Cooks v. Ward***, 165 F.3d 1283, 1289-90 (10th Cir. 1998), ***petition for cert. filed***, May 14, 1999 (No. 98-9420).

### C.  CLAIMS SUBJECT TO PROCEDURAL DEFAULT

1.      **Was Petitioner's Plea of Nolo Contendere Involuntarily Given in Violation of the Constitution?**

In June 1986, after Mr. LaFevers' first conviction and sentence of death, Mr. LaFevers entered a plea of nolo contendere to charges of robbery, kidnapping, and assault with intent to rape of a Ms. Paden and Ms. Austin. These crimes took place after the murder of Ms. Hawley. During the penalty phase of Mr. LaFevers' second trial, the state introduced the nolo contendere pleas to help prove the "continuing threat to society" aggravator. Mr. LaFevers' claims the pleas were involuntarily given because he was not aware they could be used against him in a future criminal proceeding.

This claim must fail because it has been procedurally defaulted. The claim was not raised in Mr. LaFevers' second trial or on direct appeal. Indeed, the argument was first raised in Mr. LaFevers' state habeas petition, and, there, the state court deemed it waived on an independent and adequate state law ground. *See LaFevers*, 934 P.2d at 358 n.9. Having failed to properly present the claim to the state courts, there is a procedural default in the state court and a procedural default for purposes of federal habeas.

**2.      Was Mr. LaFevers Entitled Under the Constitution to DNA Testing?**

Petitioner next contends he was entitled under the United States Constitution to DNA testing. The constitutional premise upon which this contention is based is uncertain. To be sure, petitioner mentions in passing the Eighth and Fifth Amendments, but neither contention is supported by any legal analysis or citation to federal case law. Ultimately, however, we can overlook this defect because this claim is procedurally defaulted.

The claim was not raised in either of the two trials or in either of the two direct appeals in this case. Indeed, the argument was first raised in Mr. LaFevers' state habeas petition, and, there, the state court deemed it waived on an independent and adequate state law ground. *See LaFevers,* 934 P.2d at 358 n.9. Therefore, as in the previous claim, this too is defaulted.

### D. CLAIMS HEARD IN THE FIRST INSTANCE BY THE FEDERAL DISTRICT COURT WHICH ARE NOT BARRED BY PROCEDURAL DEFAULT

### 1. Other Claims Regarding DNA Testing

Mr. LaFevers presents two other claims pertinent to DNA testing: his appellate counsel was ineffective for failing to ask for such tests after trial; and the federal district court improperly denied his discovery request for DNA testing. Ultimately, he postulates DNA evidence "would prove that he was not present when Ms. Hawley was brutally murdered."

### a. Was Mr. LaFevers' Appellate Counsel Ineffective for Failing to Request DNA Testing?

Mr. LaFevers believes his state appellate counsel was ineffective for failing to request DNA testing or at least raise the issue on direct appeal. To establish his counsel was constitutionally defective, petitioner must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment, and that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

- 27 -

This claim fails for the simple reason that the DNA testing argument on direct appeal would have been frivolous because even favorable DNA test results would not make a difference in this case. As the district court found:

> At most, the "DNA testing" requested by Petitioner will prove whether Petitioner was bleeding at the time he was at the crime scenes or whether Petitioner bled on the clothing found in Cannon's home. The "DNA testing" cannot, despite Petitioner's assertions to the contrary, prove that he was not at the crime scenes or that he was not involved in Ms. Hawley's murder.

Furthermore, even assuming the claim was not frivolous, case law provides appellate counsel has no constitutional obligation to raise every nonfrivolous issue, whether requested by the defendant or not. *See Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S. Ct. 3308, 3312-14 (1983). As the Ninth Circuit has stated:

> [The] weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. . . . [E]very weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court. For these reasons, a lawyer who throws in every arguable point--"just in case"--is likely to serve her client less effectively than one who concentrates solely on the strong arguments.

*Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989); *see also Jones*, 463 U.S. at 751-53, 103 S. Ct. at 3313.

> **b.      Did the Federal District Court Abuse its Discretion When it Denied Mr. LaFevers' Discovery Request for DNA Testing?**

In a related claim, Mr. LaFevers urges the federal district court improperly denied his discovery request for DNA testing. Rule 6(a) of the Rules Governing Section 2254

Cases requires a habeas petitioner to show good cause before he is afforded an opportunity for discovery. Good cause is shown if the petitioner makes a specific allegation that shows reason to believe the petitioner may be able to demonstrate he is entitled to relief. *See Harris v. Nelson*, 394 U.S. 286, 300, 89 S. Ct. 1082, 1091 (1969); *Bracy v. Gramley*, 520 U.S. 138, ___, 117 S. Ct. 1793, 1799 (1997) (approving the *Harris* standard). We review a district court's decision on good cause for an abuse of discretion. *See Bracy*, 520 U.S. at ___, 117 S. Ct. at 1799. Given our previous discussion, we have no doubt Mr. LaFevers has failed to show good cause for this discovery request.

**2.      Was There Sufficient Evidence to Support the Jury's Aggravating Circumstance That the Murder was Committed to Avoid Arrest or Prosecution?**

Mr. LaFevers questions whether there was sufficient evidence presented in the penalty phase of the trial to support a finding on the aggravating circumstance that the murder was committed to avoid arrest or prosecution. In determining whether a state court's application of its constitutionally adequate aggravating circumstance was so erroneous as to raise an independent due process or Eighth Amendment violation, the appropriate standard of review is the "rational factfinder" standard established in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979). *See Lewis v. Jeffers*, 497 U.S. 764, 781, 110 S. Ct. 3092, 3102 (1990). *Jackson* holds that where a federal habeas corpus claimant alleges his state conviction is unsupported by the evidence, federal courts must

determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S. Ct. at 2789. "These considerations apply with equal force to federal habeas review of a state court's finding of aggravating circumstances." *Lewis,* 497 U.S. at 782, 110 S. Ct. at 3103. "Like findings of fact, state court findings of aggravating circumstances often require a sentencer to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789).

The federal district court reviewed the trial transcripts and exhibits and concluded that a rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt. The court stated:

> After beating Ms. Hawley, Petitioner "decided that he needed to get rid of her". . . "to try to dispose of any future testimony or evidence." (TR 1091-92) Further, Petitioner told the investigating police officers that he and Cannon discussed Cannon's desire to kill Ms. Hawley because she had seen their faces and they could be identified from police lineups. . . . [¶] It is quite logical to assume that the jury concluded from the evidence that Ms. Hawley was kidnapped from her home and driven, in her stolen car, to a remote location so that she could be murdered before she identified Petitioner and Cannon as the men who burglarized her home and stole her car.

We agree with the district court's assessment of the evidence.

**3.      Was Trial Counsel Ineffective for Failing to Explain That Mr. LaFevers' Nolo Contendere Plea Could be Used Against Him in the Penalty Phase of the Second Trial?**

Mr. LaFevers posits that at the time he made his nolo contendere pleas to the Paden/Austin crimes, he was told by his attorney the plea could never be used against him as an admission of guilt. Specifically, he argues his trial counsel was ineffective for failing to explain that his nolo contendere plea could be used against him in the penalty phase of the second trial. To succeed on this issue, however, petitioner must demonstrate that his lawyer's deficient performance prejudiced his defense. To make out prejudice, he must demonstrate there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. The proper focus is on whether counsel's ineffectiveness rendered the proceedings fundamentally unfair or unreliable. ***See***

***Lockhart v. Fretwell***, 506 U.S. 364, 369-73, 113 S. Ct. 838, 842-44 (1993).

The federal district court concluded there was no prejudice here because the state had presented other evidence of Mr. LaFevers' crimes against Ms. Paden and Ms. Austin. Specifically, the court stated:

> Further, even if this Court were to agree that Petitioner's nolo contendere pleas were inadmissible (which it does not), evidence of Petitioner's crimes against Ms. Paden and Ms. Austin would have been admissible under state law. The Court of Criminal Appeals has been consistent in its approval of the use of unadjudicated bad acts as evidence to support the "continuing threat" aggravating circumstance. Ms. Paden and Ms. Austin testified as to the acts of Petitioner and [his co-defendant] Cannon during the second stage of Petitioner's trial . . . .

We agree with the district court's conclusion that Mr. LaFevers' suffered no prejudice. Even if he had not pleaded nolo contendere, the prosecution would have in any event established the Paden/Austin crime through use of unadjudicated offense evidence.

Although the district court looked exclusively to Oklahoma law on this point, we also have held due process is not violated by admission of unadjudicated offenses. *See Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999); *Williamson v. Ward*, 110 F.3d 1508, 1523 (10th Cir. 1997); *Hatch v. State of Okla.*, 58 F.3d 1447, 1465-66 (10th Cir. 1995).

Furthermore, the prosecution presented additional evidence from which a rational trier of fact could find beyond a reasonable doubt that Mr. LaFevers was a continuing threat to society. The state relied on the specific circumstances of Ms. Hawley's brutal murder and two unadjudicated prison stabbings. With respect to the latter evidence, the jury heard that in 1987, after the first trial, LaFevers and another inmate went after Cannon and stabbed him twenty-two times in prison; and, in 1990, LaFevers and yet another inmate stabbed inmate, Charles Coleman, in a prison library altercation, during which LaFevers also struggled with a prison guard. *See LaFevers*, 897 P.2d at 307. Even if counsel's performance was deficient, the presence of other evidence of violent acts makes that deficiency inconsequential. Counsel's lack of explanation did not render the proceedings fundamentally unfair or unreliable.

**4.      Was Trial Counsel Ineffective During the Penalty Phase Because he Failed to Present Other Mitigating Evidence?**

Mr. LaFevers contends that his trial counsel was aware of, but did not use, testimony of two men who claimed that the co-defendant in the case, Cannon, had "confessed" to them while they were incarcerated together in prison. Mr. LaFevers

- 32 -

claims both men would have testified that Cannon took the responsibility for the murder

and the burning of Ms. Hawley. "While this does not excuse Mr. LaFevers from being

guilty of the crime charged," petitioner argues, "it could certainly prove critical when the

jury deliberated the sentence during the second stage of the trial."[3]

The district court reviewed this claim carefully and rejected it because it found no

prejudice. The court noted:

> Petitioner's two sentence summary of the two interviews ignores the true nature of the prisoners' rendition of Petitioner's involvement in the murder of Ms. Hawley. In each inmate's interview, it is clear that Petitioner was a principal in the burglary, robbery and kidnapping; that he purchased the gasoline which was poured on Ms. Hawley and her car; and he knew that Cannon intended on murdering Ms. Hawley, but did nothing to stop the murder. Further, both inmates stated that Petitioner served as the "lookout" while Cannon raped and killed Ms. Hawley. Finally, both inmates stated that Petitioner, Cannon and a third man worked together to burn Ms. Hawley's car.

> These facts demonstrate that Petitioner was a major participant in the criminal activities. . . . Further, since Petitioner took no action to prevent the murder of Ms. Hawley it is clear that he acted with a reckless indifference to human life. Therefore, under *Tison v. Arizona*, Petitioner's death sentence would have been appropriate even if the inmates had testified and the jury believed their version of the rendition of the events.

> Finally, it should be noted that Petitioner's trial counsel apparently made a tactical decision to not call these two inmates. Petitioner's trial counsel filed numerous pre-trial motions, including a *Motion in Limine – Jail House Informants*, in which he sought to exclude the testimony of jail

---

[3]Mr. LaFevers' second claim of ineffectiveness at the penalty phase was not heard by the state courts. This claim would be procedurally barred but for the fact that Mr. LaFevers also contends his appellate counsel was ineffective for not raising this form of ineffectiveness on direct appeal.

house informants. In arguing for the exclusion of the testimony of jail house informants, Petitioner's trial counsel argued that the "testimony form [sic] jail house informants is inherently unreliable."

Mr. LaFevers has provided no reason, nor could we find any, to quarrel with the district court's assessment on this issue.

5. **Was Appellate Counsel Ineffective Because he Allegedly Failed to Communicate With Mr. LaFevers Before Filing the Brief on Direct Appeal and Failed to Appeal the Nolo Contendere Plea Issue?**

In his last claim of constitutional error, Mr. LaFevers argues that his appellate counsel was ineffective because counsel failed to communicate with him before filing the brief on direct appeal and failed to appeal the nolo contendere plea issue. We must deem both of these arguments abandoned. Mr. LaFevers' counsel simply arrogates: "he overlooked or ignored the prior 'no contest' plea of Mr. LaFevers; and most importantly he ignored his client by refusing to communicate with him prior to filing the brief on direct appeal." We have repeatedly warned litigants that issues adverted to in a perfunctory manner and without developed argumentation are deemed waived on appeal. *See, e.g., United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995); *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir. 1990). This passing and unsupported reference is no different. Moreover, both contentions are wholly without merit.

V. **CONCLUSION**

Finding no reversible error, we **AFFIRM** the judgment of the district court.

Judge Murphy concurs in the result.