**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 17, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

PAUL MACOMBER, JR.; JENNIFER
MACOMBER,

     Plaintiffs - Appellants,

v.

AMERICAN FAMILY MUTUAL
INSURANCE GROUP, a/k/a American
Family Mutual Insurance Company,

    Defendant - Appellee.

No. 17-1194
(D.C. No. 1:15-CV-00484-REB-KMT)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **LUCERO**, **HARTZ**, and **MORITZ**, Circuit Judges.

_____

Paul and Jennifer Macomber appeal the district court's entry of judgment on a

jury verdict in favor of American Family Mutual Insurance Group ("American

Family"), and the court's denial of their Fed. R. Civ. P. 59(a) motion for a new trial.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

In June 2012 the Macombers' house in Colorado Springs was damaged by a forest fire. They filed a claim with their insurer, American Family. American Family initially paid for some of the claimed losses but allegedly stopped communicating with the Macombers about others. In October 2012, the Macombers engaged a public claims adjuster, Troy Payne, and later an attorney, Evan Wolfe, both based in Florida. During the time the Macombers engaged Payne and Wolfe, American Family was required to communicate only with Payne or Wolfe.

Payne filed a proof of loss on the Macombers' behalf totaling just over $528,000. American Family viewed the proof of loss with suspicion because Payne had contemporaneously filed several strikingly similar claims on behalf of other American Family insureds for damages from the same fire. Accordingly, it referred the claims to its Special Investigations Unit. It also asked for documentation supporting the claimed losses and an examination of the Macombers under oath. Neither Payne nor Wolfe complied with those requests or informed the Macombers about them.[1] American Family further requested an opportunity to conduct inspections in the presence of Payne and the engineer on whom Payne claimed to have relied. Although Payne attended two inspections conducted by an engineer

---

[1] At trial there was some evidence that a DVD containing supporting documentation may have been sent to American Family, but American Family claimed it never received the DVD, and neither the DVD nor any evidence of its contents was produced at trial.

American Family hired, Payne's engineer did not. American Family's engineer determined that none of the claimed losses were due to the fire.

After the first of the two inspections by American Family's engineer, American Family sent a reservation of rights letter to both Payne and the Macombers. The letter stated that there was some question whether there was coverage for the claimed loss and that American Family needed to conduct further investigation. The letter also suggested that Payne's proof of loss was possibly fraudulent and requested an appointment to obtain the Macombers' recorded statements. Ultimately, American Family never approved any portion of the proof of loss Payne filed.

The Macombers complained to American Family and Colorado's Department of Regulatory Agencies ("DORA") about the insurer's handling of their claims. DORA asked American Family to file a claim with it for possible fraud, apparently based on Payne's proof of loss, and American Family informed other authorities about the questionable claim. Sometime in early 2014, the Macombers ended their affiliation with Payne and Wolfe after becoming suspicious of their integrity, forming the opinion that the two were "storm chasers," meaning "con men."

In March 2014, the Macombers filed the underlying action against American Family, asserting claims for breach of contract, unreasonable delay in or denial of benefits payments, and bad-faith breach. They later hired a general contractor, Ken Murphy. Murphy inspected the house and prepared reports supporting a new claim for nearly $190,000 in damages due to the fire, some of which were apparently part of Payne's proof of loss. Because the Macombers' suit was pending, American

3

Family was not required to decide the new claim. That claim was the basis for the breach of contract claim litigated at trial,[2] and the jury decided there had been no breach. As set out in the verdict form, that decision meant the jury was not to decide the unreasonable delay/denial or bad-faith breach claims. The Macombers unsuccessfully moved for a new trial, arguing that the district court erred in refusing to modify a jury instruction on agency. They now appeal.

## II

The Macombers' primary challenge on appeal is to the district court's refusal to modify the jury instruction on agency at trial and its denial of their Rule 59(a) motion raising the same issue. We review both of those decisions for abuse of discretion. M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 762 (10th Cir. 2009) (Rule 59(a) denial); United States v. Gonzales, 456 F.3d 1178, 1181 (10th Cir. 2006) (refusal at trial). "In assessing whether the district court properly exercised its discretion [at trial], we review the instructions de novo to determine whether, taken as a whole, they accurately state the governing law." Gonzales, 456 F.3d at 1181 (italics omitted). Defendants are "entitled to an instruction on [their] theory of the case if the instruction is a correct statement of the law, and if [they have] offered sufficient evidence for the jury to find in [their] favor." Id. (quotation omitted).

The instruction at issue informed the jury that the Macombers hired Payne and Wolfe "to act as their agents in connection with their insurance claim," and stated the

---

[2] Before trial, the Macombers stated that they had formally withdrawn Payne's submissions and were relying solely upon Murphy's estimates.

4

general agency rule that "[t]he acts or omissions of the public adjuster and attorney are the acts or omissions of the plaintiffs."[3]  During the jury instruction conference, the Macombers asked the court to insert "legal and authorized" before "acts or omissions" based on the theory that a principal is not responsible for intentional crimes of an agent.  The court denied that request, reasoning that although there was evidence that both parties were suspicious of Payne and Wolfe, there was no evidence of intentional wrongdoing or illegality, including no evidence of the result of the investigation by American Family's Special Investigation Unit.

The bulk of the Macombers' appellate argument assumes that the instruction was legally erroneous, but they offer only conclusory assertions, not evidence, to support their theory that Payne and Wolfe committed fraud or otherwise acted illegally or outside the scope of their agency such that their acts or omissions should not be attributed to the Macombers.  The Macombers conceded as much during closing argument, stating that "Despite these notifications [to DORA and other authorities], though, . . . there's no evidence that any fraudulent activity exists."  We therefore conclude that the district court did not abuse its discretion in rejecting the Macombers' proposed modification at trial.

---

[3] The instruction was relevant to one element of the breach of contract claim—whether the Macombers had "substantially performed their obligations under the insurance policy," and to American Family's affirmative defense on the breach claim that the Macombers "failed to cooperate" with American Family's investigation and settlement of the claim, "including the duty to provide information, recorded statements, and an inspection of the property when requested."

The Macombers relatedly contend there was insufficient evidence to support the jury's verdict because the instruction was legally erroneous.[4]  They assert after trial, five jurors approached counsel for both sides and stated that although they wanted to find for the Macombers on all claims, they were constrained by the agency instruction to attribute the wrongful acts of Payne and Wolfe to the Macombers.  The Macombers advanced this allegation in their Rule 59(a) motion, and American Family disagreed with their representation of the jurors' statements.  The district court denied the motion, reasoning that although there was evidence of the parties' suspicions about Payne and Wolfe, there had been no evidence that they had acted outside the scope of their agency, unlawfully, fraudulently, or in their own interests and adverse to the Macombers' interests.  The court did not address the allegation about the jurors' post-trial statements to counsel.

For the same reasons that we rejected the Macombers' challenge to the district court's ruling at trial on the proposed modification, we see no abuse of discretion in the district court's denial of the Rule 59(a) motion.  Consideration of the jurors' alleged statements is barred by Federal Rule of Evidence 606(b)(1), which prohibits a court, "[d]uring an inquiry into the validity of a verdict," from "receiv[ing] a juror's

---

[4] To the extent that the Macombers characterize their sufficiency challenge as something more general than whether there was sufficient evidence to support their proposed modification of the agency instruction, they have waived appellate review. First, they did not raise a more general challenge in the district court. See Daigle v. Shell Oil Co., 972 F.2d 1527, 1539 (10th Cir. 1992).  Second, their briefing is inadequate to merit our review of a more general challenge. See LaFevers v. Gibson, 182 F.3d 705, 725 (10th Cir. 1999).

affidavit or evidence of a juror's statement" on, among other things, "the effect of anything on [a] juror's . . . vote . . . or any juror's mental processes concerning the verdict." Fed. R. Evid. 606(b)(1). Although Rule 606(b)(2) lists exceptions to this rule, the Macombers do not argue that any are applicable here. And we are unpersuaded by their argument that the prohibition does not apply because the jurors' alleged statements merely demonstrate the instruction's prejudicial impact. The Macombers are using the statements to question the validity of the verdict, which is what Rule 606(b) guards against. See Peña-Rodriguez v. Colorado, 137 S. Ct. 855, 863–65 (2017) (reciting history and purpose of Rule 606(b) and stating that it "gives stability and finality to verdicts").

### III

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge
