FILED
United States Court of Appeals
Tenth Circuit

December 30, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICHARD TANDY SMITH,

      Petitioner - Appellant,

v.

RANDALL G. WORKMAN, Warden,
Oklahoma State Penitentiary,[*]

      Respondent - Appellee.

No. 05-6206

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-99-1329-R)**

---

Timothy Payne, Assistant Federal Public Defender (James A. Drummond,
Supervising Assistant Federal Public Defender, Capital Habeas Unit, on the
briefs), Oklahoma City, Oklahoma, for Petitioner - Appellant.

Jennifer Strickland, Assistant Attorney General (W.A. Drew Edmondson,
Attorney General, on the brief), Oklahoma City, Oklahoma, for Respondent -
Appellee.

---

Before **TACHA**, **KELLY**, and **HOLMES**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Randall G. Workman is substituted
for Marty Sirmons as Warden of the Oklahoma State Penitentiary, effective
December 15, 2008.

Petitioner-Appellant, Richard Tandy Smith, appeals from the denial of his habeas corpus petition. 28 U.S.C. § 2254; Smith v. Gibson, No. CIV-99-1329-R, 2005 WL 1185815 (W.D. Okla. May 17, 2005). Mr. Smith was convicted of first degree murder for the homicide of John Cederlund and sentenced to death based upon two aggravating circumstances. After exhausting his state remedies, Mr. Smith filed his federal habeas petition asserting eleven grounds for relief. After rejecting all asserted grounds for relief, the district court granted Mr. Smith a certificate of appealability ("COA") on one ground. We granted COA on two additional grounds. Thus, we have the following issues before us: (1) whether the trial court's failure to provide a psychiatric expert violated Ake v. Oklahoma, 470 U.S. 68 (1985), and whether counsel provided ineffective assistance by failing to raise an Ake claim, (2) whether counsel provided ineffective assistance at the mitigation stage of trial, and (3) whether the State violated Mr. Smith's due process rights under Brady v. Maryland, 373 U.S. 83 (1963). Our jurisdiction arises under 28 U.S.C. §§ 1291 and 2253, and we affirm.

Background

On July 21, 1986, Mr. Smith was driving with Pamela Rutledge and Rita Jo Cagle in a Ford Thunderbird when they stopped at two houses to acquire drugs. They were joined by Mr. Cederlund at the second house, and the foursome

proceeded to drive to an abandoned farmhouse. While at the farmhouse, Mr. Smith demanded at gunpoint that Mr. Cederlund provide him with money and drugs. When Mr. Cederlund refused, Mr. Smith shot him in the chest with a 12-gauge shotgun. The police arrested Mr. Smith on July 22, 1986, while he was driving the same Thunderbird. The police found twelve live 12-gauge number eight load shotgun shells in the car and a firearm expert testified that the pellets and shot cup found in Mr. Cederlund's body had come from the same brand, gauge, and load. Blood consistent with Mr. Cederlund's was found on the passenger door. See Smith v. State, 819 P.2d 270, 272-73 (Okla. Crim. App. 1991).

The court appointed Mark Cantrell to defend Mr. Smith. 5 R. Tr. (Cantrell Dep.) 17-18. When attorney Cantrell interviewed Mr. Smith, he was adamant that he did not commit the murder; accordingly, Mr. Cantrell based the defense on the argument that Mr. Smith did not kill Mr. Cederlund. 5 R. Tr. at 87-88, 95-96. During discovery, Mr. Cantrell discovered the existence of potentially useful statements by Ms. Rutledge as well as witness interviews regarding the events surrounding Mr. Cederlund's death. 10/10/86 Tr. 119-20, 131, 135, 146. Mr. Cantrell filed a motion to produce all exculpatory evidence on December 8, 1986. O.R. 82-83. Allegedly, however, the recorded statements of Ms. Rutledge and the other witness statements were never provided to defense counsel. Aplt. Br. 12. On the same day that Mr. Cantrell filed the motion to produce all exculpatory

-3-

evidence, Mr. Cantrell also requested the services of a mental health expert to examine Mr. Smith regarding his "sanity and mental health" at "the time the alleged crime was committed, as well as at the present." O.R. 89. Dr. Quinn, the expert appointed to evaluate Mr. Smith, declared Mr. Smith to be competent for trial.[1] The trial court denied Mr. Cantrell's subsequent request for a private physician to examine Mr. Smith. 12/31/86 Tr. 8-14, 26-27.

The trial then took place in March, 1987. At the trial, both Ms. Rutledge and Ms. Cagle testified against Mr. Smith. 3/6/87 Tr. 119; 3/9/87 Tr. 177. On March 16, 1987, the jury convicted Mr. Smith of first degree felony murder. 3/16/87 Tr. 117-20. Then, after a break of approximately fifteen minutes, the trial moved to the mitigation phase. 3/16/87 Tr. 120-21, 160. Mr. Cantrell's extremely brief mitigation presentation, which only took up six pages of transcript, consisted of Mr. Smith's mother's testimony that Mr. Smith had been treated by psychiatrists, his older sister's testimony that she raised him intermittently, and both his mother's and sister's testimony that they desired that he live. 3/16/87 Tr. 162-63, 209-12, 239-42. Following mitigation testimony, the jury recommended sentencing Mr. Smith to death on the basis of two aggravating circumstances: (1) that Mr. Smith had twice been convicted of violent felonies, and (2) that there existed the probability that he posed a continuing threat to

_____

[1] Dr. Quinn did not perform any tests on Mr. Smith, but rather based his opinion on a set of standard questions. 12/31/86 Tr. 8-9, 13-14.

society.  3/16/87 Tr. 252-53.  The trial court sentenced Mr. Smith accordingly.  4/17/87 Tr. 13-14.

On September 20, 1991, the Oklahoma Court of Criminal Appeals (OCCA) affirmed Mr. Smith's conviction and sentence on direct appeal.  Smith, 819 P.2d at 279.  After the United States Supreme Court denied certiorari, Smith v. Oklahoma, 504 U.S. 959 (1992), the OCCA denied Mr. Smith's application for state post-conviction relief.  Smith v. State, PC-1997-1656 (Okla. Crim. App. July 27, 1999).  Mr. Smith then filed this federal habeas petition.  The district court granted an evidentiary hearing on the claim of ineffective assistance of counsel at mitigation.  1 R. Doc. 43.  Following a lengthy delay, the evidentiary hearing took place on April 25, 2005.  2 R. Tr. 3-4.  At the hearing, Mr. Smith's attorney presented the depositions of trial counsel Mark Cantrell, as well as that of Drs. Lipman and Fleming.  2 R. Tr. 4-5.  The district court subsequently denied the habeas petition in its entirety.  Smith, 2005 WL 1185815, at *24.  Mr. Smith also filed two more post-conviction applications, both of which the OCCA denied.  Smith v. State, PCD-2002-970 (Okla. Crim. App. Mar. 24, 2004); Smith v. State, PCD-2005-1154 (Okla. Crim. App. Feb. 28, 2007).  After the United States Supreme Court denied review of his third application for post-conviction relief, Smith v. Oklahoma, 128 S. Ct. 128 (2007), this court denied Mr. Smith's application for an order authorizing him to file a successive habeas petition.  In re Richard Tandy Smith, No. 08-6053 (10th Cir. Apr. 2, 2008).  Now Mr. Smith

brings this appeal on the three issues on which a COA has been granted.

Standard of Review

Under AEDPA, the appropriate standard of review depends on whether a claim was decided on the merits in state court. "If the claim was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance, we review the district court's conclusions of law de novo and its findings of fact, if any, for clear error." LaFevers v. Gibson, 182 F.3d 705, 711 (10th Cir. 1999) (interpreting § 2254(d)); see Snow v. Sirmons, 474 F.3d 693, 696-97 (10th Cir. 2007). If a petitioner's claims were adjudicated on their merits by the state courts, the petitioner will be entitled to federal habeas relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).[2]  See Snow,

---

[2] In applying this standard, we first assess whether there is clearly established federal law, as set forth in the holdings of the Supreme Court. House v. Hatch, 527 F.3d 1010, 1016-17 (10th Cir. 2008). If there is, we then consider whether the state court decision was contrary to or involved an unreasonable application of it. Id. at 1018.

A federal habeas court may issue the writ under the 'contrary to'
(continued...)

-6-

474 F.3d at 696; McLuckie v. Abbott, 337 F.3d 1193, 1197 (10th Cir. 2003). In determining whether the decision was contrary to or unreasonably applied clearly established federal law, we review the district court's legal analysis of the state court decision de novo. Allen v. Mullin, 368 F.3d 1220, 1234 (10th Cir. 2004); Valdez v. Ward, 219 F.3d 1222, 1230 (10th Cir. 2000). State court determinations of fact "shall be presumed to be correct" unless the presumption is rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Willingham v. Mullin, 296 F.3d 917, 922 (10th Cir. 2002) (quoting Walker v. Gibson, 228 F.3d 1217, 1225 (10th Cir. 2000)); see Snow, 474 F.3d at 696.

## Discussion

I.    Ineffective Assistance for Failure to Assert *Ake* Rights

In order to establish that he was denied effective assistance of counsel, Mr.

---

[2](...continued)
clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court would] have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002); see also Maynard v. Boone, 468 F.3d 665, 669-70 (10th Cir. 2006).

Smith (hereinafter "Petitioner") must prove deficient performance by counsel and resulting prejudice. Le v. Mullin, 311 F.3d 1002, 1024-25 (10th Cir. 2002) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To demonstrate that counsel's performance was deficient, Petitioner must overcome the presumption that counsel's conduct was constitutionally effective; he must show that counsel's conduct was not sound trial strategy and that it was unreasonable. Id. at 1025. To prove that he was prejudiced, Petitioner must show that there was a "reasonable probability" that the result would have been different but for the error. Id.

A.      Trial Counsel's Failure to Request an *Ake* Expert for the Mitigation Stage of Trial

Petitioner argues that attorney Cantrell provided ineffective assistance because it was unreasonable not to request a mental health expert pursuant to Ake v. Oklahoma, 470 U.S. 68 (1985), for the mitigation phase of the trial. Aplt. Br. 18. In Ake, the Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist." Ake, 470 U.S. at 83. As to the specific context of the mitigation stage of trial, the Supreme Court said that the State must provide a psychiatric expert "when the State presents psychiatric evidence of the defendant's future dangerousness." Id. The Supreme Court ultimately concluded that, because the

-8-

defendant was not provided a psychiatric expert, the defendant was wrongfully denied the means to rebut the State's proffered psychiatric evidence of future dangerousness. Id. Petitioner argues that the Ake right extends beyond the right to have the trial court provide an expert when the State is presenting psychiatric evidence of the defendant's future dangerousness—even though the facts of Ake only addressed that narrow circumstance—and creates a right to an expert when *any* evidence of future dangerousness is introduced. Aplt. Br. 21-28. Therefore, according to Petitioner's argument, counsel provided ineffective assistance by failing to make a request for an Ake expert even though the State did not present psychiatric evidence of future dangerousness. Id.

As a preliminary matter, it should be noted that the OCCA found that this ineffective assistance claim was barred because it was not raised on direct appeal. Smith, No. PC-1997-1656, slip op. at 4. The federal district court, on the other hand, found that this ineffective assistance of counsel claim was not barred because it requires consideration of matters outside the trial record. See Smith, 2005 WL 1185815, at *4. The district court was correct in finding that our cases compel the conclusion that ineffective assistance claims requiring consideration of matters outside the trial record are not procedurally barred for failure to raise the issue on direct appeal. See Cargle v. Mullin, 317 F.3d 1196, 1212 (10th Cir. 2003); Spears v. Mullin, 343 F.3d 1215, 1252 (10th Cir. 2003); Revilla v. Gibson, 283 F.3d 1203, 1220 (10th Cir. 2002); Sallahdin v. Gibson, 275 F.3d 1211, 1234

(10th Cir. 2002).  The state procedural bar is adequate only where the defendant is represented by different counsel on appeal and (a) the ineffective assistance claim could be resolved solely on the direct appeal record or (b) the defendant could have expanded the record to demonstrate the ineffective assistance claim. Spears, 343 F.3d at 1252.  We must bear in mind this court's previously expressed concerns about procedurally barring ineffective assistance claims that could not be developed on direct appeal.  See Brecheen v. Reynolds, 41 F.3d 1343, 1363-64 (10th Cir. 1994) (stating that the need to provide meaningful opportunity to develop a claim of ineffective assistance compels the conclusion that such claims can be brought for the first time collaterally); Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988) (noting the need for additional fact-finding and the advice of separate counsel in an ineffective assistance claim).  Therefore, we reach the merits of Petitioner's claim.[3]  Given that the OCCA did not reach the merits of this allegation, our review is not bound by § 2254 deference.  See Cargle, 317 F.3d at 1212.

On the merits, Petitioner is correct insofar as he argues that the Tenth Circuit has stated in Liles v. Saffle, that the trial court should provide a psychiatric expert when the defendant's mental condition could be a significant

---

[3] Because we reach the merits of this claim for ineffective assistance of *trial* counsel for failure to request an Ake expert, we need not reach Petitioner's fourth proposition of error, namely, his attempt to raise the same claim by asserting ineffective assistance of *appellate* counsel.

-10-

mitigating factor and when the State presents any evidence, psychiatric or not, concerning future dangerousness. 945 F.2d 333, 341 (10th Cir. 1991). And in this case, the State did present evidence of future dangerousness as an aggravating factor. The complicating element here is that Petitioner's case was heard and he was sentenced before Liles had been decided. Indeed, at the time, the Oklahoma courts had concluded that Ake was limited to cases where the State puts on expert psychiatric evidence to show future dangerousness. See Brewer v. State, 718 P.2d 354, 363-64 (Okla. Crim. App. 1986); cf. Fitzgerald v. State, 972 P.2d 1157, 1169 & n.43 (Okla. Crim. App. 1998) (stating that Brewer has since been abrogated and Ake given a broader reading in Oklahoma courts). Petitioner argues that the state of the law at the time of his trial is irrelevant because this court later concluded that the state trial court in Brewer erred in denying the request for a mental health expert, even though Liles had not yet been decided at the time of that state trial. Aplt. Br. 22; see Brewer v. Reynolds, 51 F.3d 1519, 1529 (10th Cir. 1995). According to Petitioner, because we found that the state trial court erred in Brewer—even though this court had not yet clearly held that Ake extended to situations where the State had not proffered psychiatric evidence—then counsel in this case must also have erred by failing to make an Ake claim. Aplt. Br. 22.

However, Petitioner reads this court's opinion in Brewer to say something that it does not. Brewer dealt with a substantive Ake claim and held that the state trial court erred in denying a request for an Ake expert; it did not say that it

-11-

would be unreasonable for an attorney to choose *not* to make a request for an <u>Ake</u> expert in the first place.  See <u>Brewer</u>, 51 F.3d at 1529.  The question of whether a trial court *erred as a matter of law* in denying an <u>Ake</u> request by a defendant in Petitioner's situation prior to <u>Liles</u> is different from the question of whether an attorney acts *unreasonably* in not making such a request, given the unfavorable state of the law at the time.  Of course, the latter question is the question we confront under the <u>Strickland</u> ineffective assistance test.  Indeed, in a factually indistinguishable situation, this court has found that it was not ineffective assistance to fail to make an <u>Ake</u> request prior to <u>Liles</u> when the State had not offered psychiatric evidence of future dangerousness.  See <u>Revilla</u>, 283 F.3d at 1220-21 ("[W]e cannot say counsel's failure to request an expert was professionally unreasonable in 1987, at a time when <u>Ake</u> itself did not establish the validity of such a request, state case law rejected it, and even this circuit's extension of <u>Ake</u> would not take place for several years.").  Therefore, while it would be ineffective assistance to not make a request for an <u>Ake</u> expert today even if the State did not proffer psychiatric evidence, we have held that it was not ineffective assistance at the time and we follow that holding.

B.  <u>Trial Court's Failure to Provide an *Ake* Expert at the Guilt/Innocence Stage of Trial</u>

Petitioner also asserted under the heading of ineffective assistance of counsel the argument that the trial court violated Petitioner's rights by failing to

-12-

provide an <u>Ake</u> expert at the guilt/innocence stage of the trial.[4]  Aplt. Br. 34-36.

The district court deemed this substantive <u>Ake</u> claim to be procedurally barred,

see <u>Smith</u>, 2005 WL 1185815, at *15, because the OCCA found the claim could

have been raised on direct appeal but was not, <u>see Smith</u>, No. PC-1997-1656, slip

op. at 9-10.  Nevertheless, the district court reviewed the merits because

Petitioner had asserted ineffective assistance of appellate counsel for failure to

raise the substantive <u>Ake</u> claim.  <u>See Smith</u>, 2005 WL 1185815, at *15.  We agree

that Petitioner's substantive <u>Ake</u> claim is procedurally barred given that the

OCCA deemed the claims waived on an independent and adequate state law

ground, Okla. Stat. tit. 22, § 1086, because it was not raised on direct appeal.  <u>See</u>

<u>Clayton v. Gibson</u>, 199 F.3d 1162, 1175 (10th Cir. 1999); <u>Sellers v. State</u>, 973

P.2d 894, 895 n.9 (Okla. Crim. App. 1999).  However, because Petitioner asserted

ineffective assistance of appellate counsel in failing to raise his substantive <u>Ake</u>

claim as cause for his procedural default, we examine the merits of the claim.

<u>See Hammon v. Ward</u>, 466 F.3d 919, 925 (10th Cir. 2006) (finding allegations of

ineffective assistance by appellate counsel to be sufficient to excuse the

procedural bar).  Given that the state court did not rule on the merits, we review

de novo.  <u>See LaFevers</u>, 182 F.3d at 711.

---

[4] We note here that Petitioner waived his claim for ineffective assistance insofar as it relates to failure to request an <u>Ake</u> expert for competency proceedings because he did not reassert that claim in his briefs to this court.  <u>See</u> <u>Tran v. Trs. of State Colleges in Colo.</u>, 355 F.3d 1263, 1266 (10th Cir. 2004).

-13-

In considering this ineffective assistance of appellate counsel claim, we apply the same test as that used in evaluating a claim of ineffective assistance of trial counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000). "In order to evaluate appellate counsel's performance, 'we look to the merits of the omitted issue.'" Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004) (quoting Cargle, 317 F.3d at 1202). While counsel should not omit "plainly meritorious" claims, counsel need not raise meritless issues. Id. Petitioner must show an "objectively unreasonable" decision by the appellate counsel as well as a "reasonable probability that the omitted claim would have resulted in relief." Neill v. Gibson, 278 F.3d 1044, 1057 & n.5 (10th Cir. 2001).

According to Petitioner, appellate counsel was ineffective in that counsel did not raise a claim that the trial court violated Ake by failing to provide an Ake expert for the guilt/innocence stage of trial. Petitioner argues that attorney Cantrell requested the assistance of an Ake expert for the guilt/innocence stage because he requested by written motion an examination of Petitioner's mental health "*at the time the alleged crime was committed*, as well as at the present." O.R. 89 (emphasis added); see Aplt. Br. 34-35. Petitioner further argues that this request sufficed to make the threshold Ake showing that Petitioner's mental health was to be a significant factor at trial.[5] Aplt. Br. 36. Accordingly,

---

[5] Under Ake, the defendant must make the threshold showing that his

(continued...)

-14-

Petitioner concludes that the trial court's failure to appoint an Ake expert was error.  Id.

However, the district court, in deciding the merits of this claim for the first time, found that Petitioner did not request expert psychiatric assistance for trial purposes.  Smith, 2005 WL 1185815, at *17.  Petitioner did not show that this factual finding was clearly erroneous, as he would have to do under the relevant standard of review.  See LaFevers, 182 F.3d at 711.  To the contrary, Petitioner contradicts his own argument on this point elsewhere in his brief by asserting that Mr. Cantrell "did not ask for a defense mental health expert for trial purposes." Aplt. Br. 18.  We also note that at the hearing on trial counsel's application for a competency determination, the sole focus was on whether Petitioner was competent to stand trial.  12/11/86 Tr. 2-27.  At no time did counsel or the state court construe the proceedings as a request for an Ake expert for trial purposes. Moreover, counsel relied on Ake to request a private investigator, but conspicuously did not rely on Ake with regard to a psychiatric expert.  12/11/86 Tr. 30-35.  Finally, the trial court understood counsel to have only requested

---

[5](...continued)
mental health will be a "significant factor" in his defense in order to be entitled to a psychiatric expert.  Ake, 470 U.S. at 82-83; see Allen v. Mullin, 368 F.3d 1220, 1235-36 (10th Cir. 2004).  General allegations, without substantive supporting facts, are insufficient to require the appointment of a psychiatrist.  See James v. Gibson, 211 F.3d 543, 552 (10th Cir. 2000); Liles, 945 F.2d at 336.  We doubt that threshold showing was overcome here, but we need not reach this issue because we conclude Petitioner never requested an Ake expert.

"appointment of an independent psychologist or psychiatrist for purposes of the competency question."  12/31/86 Tr. 27.  Thus the record, far from supporting a showing of clear error, provides an adequate basis for the district court's finding that Petitioner did not request psychiatric assistance for trial purposes.

Accepting the district court's finding that counsel did not make an Ake request, we must necessarily conclude that Petitioner's substantive Ake claim is meritless.  There is no support for the argument that the trial court must *sua sponte* appoint a psychiatric expert for a defendant where counsel made no request for such expert assistance.  Ake itself is premised on the idea that counsel must make such a request in order to trigger the right to a psychiatric expert.[6]  See Ake, 470 U.S. at 74 (stating that an expert should be appointed "when a *defendant* has made [the requisite] preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial" (emphasis added)); see also James v. Gibson, 211 F.3d 543, 552 (10th Cir. 2000) (stating that an expert must be appointed if "the *defendant* establishes that his mental state could be a significant mitigating factor" (emphasis added)); Liles, 945 F.2d at 335-36 ("A criminal defendant is entitled to psychiatric assistance at trial *when he is able to*

---

[6] Other circuits have agreed with this conclusion, adopting the position that the state does not have to provide a psychiatric expert unless defense counsel makes a request.  See, e.g., Holland v. Horn, 519 F.3d 107, 120-21 (3d Cir. 2008); United States v. Brown, 441 F.3d 1330, 1365 (11th Cir. 2006) (stating that a defendant must show "a timely request for the expert assistance").

*make 'an* ex parte *threshold showing* to the trial court that his sanity is likely to be a significant factor'") (emphasis added)).  As these cases show, the burden for securing an <u>Ake</u> expert is on the defendant.  While <u>Ake</u> provided that the right to have a psychiatric expert when the defendant's state of mind is a significant factor at trial is one of the "basic tools of an adequate defense," <u>see</u> <u>Ake</u>, 470 U.S. at 76-80, we have previously suggested that the defendant is not unconstitutionally denied the right to the basic tools of an adequate defense where the defendant never asks for them.  <u>Roberts v. Ward</u>, No. 98-6066, 1999 WL 162751, at *7 (10th Cir. Mar. 25, 1999) (unpublished opinion) ("There can be no constitutional violation of an accused's rights to the basic tools of an adequate defense if counsel never asked for those tools.").  This case presents exactly that situation.

Therefore, Petitioner's claim that the trial court wrongfully failed to provide an <u>Ake</u> expert for the guilt/innocence phase of trial must be rejected.  Accordingly, Petitioner has not shown a reasonable probability that counsel would have prevailed on appeal, <u>see</u> <u>Smith</u>, 528 U.S. at 285, and we find that appellate counsel did not act unreasonably by not raising this claim.

II.     <u>Ineffective Assistance at Mitigation</u>

Petitioner also argues that Mr. Cantrell provided ineffective assistance of

counsel at the mitigation stage of trial.[7]  Petitioner points out that the defense

counsel presented almost nothing on his client's behalf in mitigation of the

offense.  Aplt. Br. 37.  According to Petitioner, Mr. Cantrell conducted an

inadequate investigation in that the only preparation he made for mitigation was

to interview Petitioner, Petitioner's mother, and a couple of siblings; and the

preparations Mr. Cantrell did undertake only began seven to ten days before trial.

Id. at 39-40.  Petitioner argues that Mr. Cantrell's preparations fell far short of

ABA Guidelines[8] and Supreme Court precedent.  Id. at 40-47.  Petitioner asserts

that Mr. Cantrell's unreasonable investigation was prejudicial because there was a

"wealth" of other available information Mr. Cantrell did not uncover, including

evidence of deprivation, neglect, physical abuse, psychological problems,

addiction, and brain damage.  Aplt. Br. 43-44, 52-53.  Most of this mitigation

evidence was derived from the evaluations of Dr. Lipman and Dr. Fleming, both

of whom evaluated Petitioner during state post-conviction proceedings.  Id. at 53.

---

[7] As with the claim for ineffective assistance of trial counsel for failure to request an Ake expert for mitigation purposes, this claim should not be procedurally barred because it requires consideration of matters outside the trial record.  See Cargle, 317 F.3d at 1212; Revilla, 283 F.3d at 1220.

[8] The Supreme Court has noted that the ABA standards are "guides to determining what is reasonable."  Strickland, 466 U.S. at 688; see Rompilla v. Beard, 545 U.S. 374, 387 (2005).  The ABA Guidelines stated, inter alia, that "[i]t is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction."  Rompilla, 545 U.S. at 387 (quoting 1 ABA Standards for Criminal Justice 4-4.1 (2d ed. 1982 Supp.)).

-18-

Petitioner's brief recounts at length the abuse Petitioner received as a child, his history of drug abuse, evidence of brain damage, and Dr. Lipman's and Dr. Fleming's diagnoses of schizophrenia. Id. at 53-63; see also Smith, 2005 WL 1185815, at *6-9.

The district court, while accepting that there was a wealth of information that defense counsel did not uncover, agreed with the State's argument that the defense counsel's investigation was reasonable. Smith, 2005 WL 1185815, at *13. The State's basic argument was that the investigation was objectively reasonable, that counsel made a strategic decision not to present certain evidence relating to Petitioner's upbringing because it might actually enhance rather than mitigate the State's argument that he presented a continuing threat, and that counsel's failure to discover the evidence cited by Petitioner was due to the failure of Petitioner and Petitioner's family members to disclose information. Id. at *9.

Counsel has a duty to make reasonable investigation for mitigation evidence or to make a reasonable decision that a particular investigation is unnecessary. Walker v. Gibson, 228 F.3d 1217, 1233 (10th Cir. 2000); Brecheen, 41 F.3d at 1366. When reviewing the performance of counsel at the sentencing stage of a capital case, there is a need to apply close scrutiny, Battenfield v. Gibson, 236 F.3d 1215, 1226 (10th Cir. 2001), because "[m]itigating evidence plays an overwhelmingly important role in the 'just imposition of the death

penalty,'" Romano v. Gibson, 239 F.3d 1156, 1180 (10th Cir. 2001) (quoting Mayes v. Gibson, 210 F.3d 1284, 1288 (10th Cir. 2001)), and "[t]he sentencing stage is the most critical phase of a death penalty case," id. On the other hand, the failure to present available mitigating evidence is not per se ineffective assistance. Hale v. Gibson, 227 F.3d 1298, 1315 (10th Cir. 2000); Boyd v. Ward, 179 F.3d 904, 918 (10th Cir. 1999). An attorney "'is not required to investigate all leads' as long as the decision not to pursue a particular lead . . . is reasonable under the circumstances." Brecheen, 41 F.3d at 1366; see Strickland, 466 U.S. 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). The ultimate standard, then, is that the decision either not to pursue a particular lead or not to present mitigating evidence discovered during the investigation into the defendant's background must have been reasonable. Walker, 228 F.3d at 1233; Brecheen, 41 F.3d at 1366. And, of course, the reasonableness of an attorney's investigation is dependent on the circumstances of the case. Walker, 228 F.3d at 1233.

Mr. Cantrell's investigation and presentation at the mitigation stage certainly merits close examination. The district court remarked that the mitigation testimony was "shocking in its brevity, its failure to humanize the Petitioner or to explain his actions." Smith, 2005 WL 1185815, at *6. The mitigation testimony was short on detail, and the investigation technically began a

-20-

mere seven to ten days before trial—although, as counsel testified, segmenting information in a capital case (for one stage or another) is not always realistic: one uses the information to best advantage wherever possible. 5 R. Tr. 46-47. But attorney Cantrell was understandably reluctant to have Petitioner's mitigation witnesses open the door to Petitioner's lifetime propensity for fighting, thereby supporting an aggravating factor. 5 R. Tr. 68 ("What I didn't want the jury to hear is that he spent his life getting in fights and whipping up on people."). With 20-20 hindsight, there is much more that might have been presented, including information regarding Petitioner's abuse as a child, addiction problems, psychological problems, brain injury and borderline intelligence. The district court's summary of this evidence is extensive. See Smith, 2005 WL 1185815 at *6-8. In this case, as in almost every case, "trial counsel could have done more." Turrentine v. Mullin, 390 F.3d 1181, 1209 (10th Cir. 2004). However, the question is not whether he could have done more, but rather whether his decision not to do more was objectively reasonable, applying heavy deference to the counsel's judgments. Strickland, 466 U.S. at 691; Turrentine, 390 F.3d at 1209.

We cannot say that Mr. Cantrell acted unreasonably under the circumstances presented in this case. By necessity, Mr. Cantrell's primary source for securing the mitigating evidence now brought to light regarding Petitioner's past was Petitioner and his relatives. Mr. Cantrell interviewed Petitioner between fifty to one hundred times and his relatives between three and ten times. 5 R. Tr.

-21-

34, 53-54.  In fact, according to Mr. Cantrell's testimony, he saw Petitioner every day for the better part of three months.  5 R. Tr. 74.  Although Mr. Cantrell asked specific, detailed questions about child abuse and addiction because he knew of the natural tendency to hide such information, 5 R. Tr. 62-66, 69-72, neither Petitioner nor Petitioner's family told Mr. Cantrell the information that Petitioner later provided to the psychiatrists, 5 R. Tr. 96-98.  Petitioner never told Mr. Cantrell of hearing voices, 5 R. Tr. 83, 89, nor did he tell Mr. Cantrell that he had consumed crank and methamphetamine just prior to the crime or ever, 5 R. Tr. 72, 89-90.[9]  To the contrary, Petitioner and his family said he avoided hard drugs, 5 R. Tr. 70, and Mr. Cantrell never observed signs of withdrawal, 5 R. Tr. 75-76.  Mr. Cantrell had no information regarding Petitioner's head injury.  5 R. Tr. 47.

Certainly, Mr. Cantrell knew that Petitioner had been prescribed antipsychotic drugs, that he had attempted suicide, and that he sometimes did not remember things or explained them in a non-linear fashion.  5 R. Tr. 40-41, 48-49, 78-79, 86-87, 94-95, 105.  He acted on this information regarding Petitioner's reduced mental abilities by seeking to have him examined for competency.  5 R.

---

[9]  Petitioner argues that there were extensive records of past alcohol and drug use that attorney Cantrell should have discovered.  Aplt. Reply Br. 10-11. However, we cannot fault Mr. Cantrell for not securing and using these records without some sort of showing that he had reason to believe that they might lead to useful mitigation information.  And of course this information, had it been used, surely would have bolstered the State's argument regarding the continuing threat aggravator.

Tr. 86, 89. Thereafter, Mr. Cantrell was able to piece together Petitioner's rendition of events so as to come up with a "whole story" for the defense (as noted, Petitioner consistently maintained his innocence) and reported that Petitioner was cooperative and communicated with him at trial. 5 R. Tr. 41-42, 77-79, 83 ("He's the best defendant I've ever represented at writing things down and then talking to me before the witness went off the stand."), 88. Furthermore, Mr. Cantrell did follow up on the fact that Petitioner had been treated for mental illness, but the only facility of which he was informed that had documents regarding Petitioner only had a record of his admittance and discharge. 5 R. Tr. 34-35, 47-48. Finally, Mr. Cantrell personally paid for two private investigators, one of whom had a psychology degree and helped with mitigation issues. 5 R. Tr. 23-28.

The Supreme Court recognized in Strickland that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691; see Romano, 239 F.3d at 1181; Brecheen, 41 F.3d at 1370. The answers provided by a defendant go a long way toward determining counsel's best line of action because it may reveal information that the counsel should investigate, or, potentially, it could indicate that there is no information to be uncovered by investigation. See Strickland, 466 U.S at 691. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or

-23-

even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id. In this circuit, we have previously held that counsel is not ineffective for failure to discover mitigating evidence where his investigation is stymied by a witness's refusal to be forthcoming. See Young v. Sirmons, 486 F.3d 655, 682-83 (10th Cir. 2007) (finding no ineffective assistance where the defendant had failed to mention any of the serious physical abuse he endured as a child); Duckett v. Mullin, 306 F.3d 982, 998 (10th Cir. 2002) (finding no ineffective assistance where counsel had asked specifically about drug use and physical abuse but the witnesses refused to divulge any information); Romano, 239 F.3d at 1182 (finding no ineffective assistance where counsel was not informed of abuse); United States v. Miller, 907 F.2d 994, 999 (10th Cir. 1990) (finding no ineffective assistance where the defendant did not inform counsel of his psychiatric treatment).

As these cases demonstrate, we have concluded under circumstances similar to those presented here that "counsel cannot be faulted for 'failing to raise claims as to which the client has neglected to supply the essential underlying facts . . . [because] clairvoyance is not required of effective trial counsel.'" Miller, 907 F.2d at 999 (quoting Dooley v. Petsock, 816 F.2d 885, 891 (3d Cir. 1987)). Here, Petitioner and his family never indicated—in fact, they denied—that there were fruitful lines of inquiry into his background with drugs, abuse, and mental illness. Almost all of the mitigating evidence of Drs. Fleming and Lipman that Petitioner

-24-

now presents, which the doctors gained during interviews lasting for hours, came from Petitioner and his family. 4 R. Tr. 11, 64-66, 70-76, 85-88, 112-113; 3 R. Tr. 46-47, 51-53, 56-59, 85. But while Mr. Cantrell tried to obtain this evidence from Petitioner over a span of months, Petitioner and his family did not provide the necessary information. Given the apparent good faith in which the counsel conducted the investigation and the lack of transparency on the part of his primary sources of information, we conclude that counsel's performance did not fall "below an objective standard of reasonableness," measured "under prevailing professional norms." Strickland, 466 U.S. at 688.

Lack of transparency distinguishes this case from the Supreme Court cases that Petitioner cites. In Williams v. Taylor, the Supreme Court found ineffective assistance where preparation for mitigation began a week before trial, and defense counsel missed evidence of severe neglect and abuse and borderline retardation. 529 U.S. 362, 395-96 (2000). However, in that case, counsel failed to return a call to a witness who claimed to have relevant information. Id. at 373. Here, in contrast, counsel did not have notice of and yet refuse to follow up on a potentially fruitful line of inquiry. In Wiggins v. Smith, the Supreme Court found ineffective assistance where counsel chose to stop investigating after looking into three sources, and failed to uncover evidence of abuse, alcoholism, molestation, and diminished mental capacities. 539 U.S. 510, 524-35 (2003). But there, unlike this case, counsel failed to comply with standard practices in the state

courts.  Id. at 524.  Finally, in Rompilla v. Beard, the Supreme Court found ineffective assistance where the defense counsel failed to examine a court file regarding the client's prior conviction.  545 U.S. 374, 384 (2005).  Again, that case is distinguishable because the counsel knew of a potentially fruitful avenue of investigation and nevertheless refused to investigate.  Id. at 383-84.  Here, unlike the cases cited by Petitioner, counsel did not fail to follow up on a lead he knew could be advantageous.  Rather, counsel's investigation attempts were thwarted by the client.

Having determined that Petitioner's claim fails the first prong of the Strickland standard, we need not address whether he was prejudiced by counsel's performance.  See Smith v. Robbins, 528 U.S. 259, 286 n.14 (2000); Romano, 239 F.3d at 1181 ("This court can affirm the denial of habeas relief on whichever Strickland prong is the easier to resolve.").

III.    *Brady* Violation

Petitioner also claims that the State violated his right to examine material exculpatory or impeaching evidence related to guilt or punishment because it failed to turn over critical evidence.  See Brady v. Maryland, 373 US. 83, 87 (1963); see also Giglio v. United States, 405 U.S. 150, 153-54 (1972).  Under Brady, the government must disclose all evidence that is either favorable to the defense or discrediting to the government's case.  Brady, 373 U.S. at 87.  The Petitioner bears the burden of showing that the prosecution suppressed material

evidence favorable to the Petitioner.  Moore v. Gibson, 195 F.3d 1152, 1164 (10th

Cir. 1999).  In order for the evidence to be material, there must be a "reasonable

probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different.  A 'reasonable probability' is a probability

sufficient to undermine confidence in the outcome."  Id. at 1165 (quoting

Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987)) (internal quotation marks

omitted).  Here, Petitioner points to numerous documents withheld by the State

that might have been of assistance to the defense.  Petitioner argues that these

documents were material because they would have allowed the defense to build a

circumstantial case against other suspects and might have undermined the

credibility of two key witnesses, Ms. Cagle and Ms. Rutledge.

However, we do not reach Petitioner's argument that the evidence was

material—in that it might give rise to a reasonable probability that the outcome

might have been different had the evidence been disclosed—if the claim is

procedurally barred.  The district court held that Petitioner's Brady claim was

procedurally barred, Smith, 2005 WL 1185815, at *23, because the issue could

have been, but was not, raised on direct appeal, Smith, No. PC-97-1656, slip op.

at 4 & n.4.[10]  The district court held that the OCCA's determination that the claim

_____

[10] Petitioner argues that the OCCA did not actually find his claim to be
procedurally defaulted, Aplt. Br. 102-03, but that argument does not have merit.
The OCCA's opinion specifically noted Petitioner's argument that the State had
(continued...)

was waived constituted an independent and adequate state law ground for denying habeas relief. <u>Smith</u>, 2005 WL 1185815, at *23.

Claims that are defaulted in state court on adequate and independent state procedural grounds will not be considered by a habeas court, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. <u>Hammon</u>, 466 F.3d at 925; <u>Smith v. Mullin</u>, 379 F.3d 919, 925 (10th Cir. 2004); <u>McCracken v. Gibson</u>, 268 F.3d 970, 976 (10th Cir. 2001). A state procedural default is "independent" if it relies on state law, rather than federal law. <u>English v. Cody</u>, 146 F.3d 1257, 1259 (10th Cir. 1998). A state procedural default is "adequate" if it is firmly established and regularly followed. <u>Clayton v. Gibson</u>, 199 F.3d 1162, 1171 (10th Cir. 1999). Here, these standards have been met. The waiver of claims not brought on direct appeal is based on state law, <u>see</u> 22 Okla. Stat. tit. 22 § 1086, and this court has found Oklahoma's bar of claims not raised on direct appeal to be independent and adequate with respect to claims other than ineffective assistance of counsel, <u>see</u> <u>Cannon v. Gibson</u>, 259 F.3d 1253, 1267-69 (10th Cir. 2001) (bar is adequate for <u>Brady</u> claims); <u>Hale</u>, 227 F.3d at 1330 (bar is independent and adequate for <u>Brady</u> claims). Moreover, as the district court noted, Petitioner has not attempted to show either cause and prejudice or that a

---

[10](...continued)
not disclosed "material exculpatory evidence" but found that it had been waived. <u>See</u> <u>Smith</u>, No. PC-97-1656 at 4 & n.4.

-28-

fundamental miscarriage of justice will occur if this claim is not reviewed.

<u>Smith</u>, 2005 WL 1185815, at \*23. Therefore, Petitioner's <u>Brady</u> claim is procedurally barred.

AFFIRMED.