FILED
United States Court of Appeals
Tenth Circuit

December 1, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

REGINALD MEEKS,

      Petitioner-Appellant,

v.

DAVID R. MCKUNE, Warden,
Lansing Correctional Facility;
STEPHEN N. SIX, Kansas Attorney
General,

      Respondents-Appellees.

No. 09-3133
(D. Kansas)
(D.C. No. 5:08-CV-03074-EFM)

---

**ORDER AND JUDGMENT AND ORDER DENYING CERTIFICATE OF
APPEALABILITY**[*]

---

Before **KELLY**, **BRISCOE**, and **HOLMES**, Circuit Judges.

---

Petitioner Reginald Meeks, a Kansas state prisoner convicted of first-

degree murder, brings this pro se 28 U.S.C. § 2254 petition in which he argues

---

[*]    This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1. After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

that his Sixth Amendment confrontation rights were violated when the trial court admitted the victim's statement into evidence. The district court denied habeas relief but granted a certificate of appealability ("COA") on that claim, and Mr. Meeks appeals. The district court, however, denied Mr. Meeks's request for a COA as to four other issues. Mr. Meeks seeks a COA from this court in order to challenge the district court's denial of his petition as to those grounds, which are described in further detail below. For substantially the same reasons set forth by the district court, we **DENY** Mr. Meeks's habeas petition on the merits of his Confrontation Clause claim and **DENY** Mr. Meeks's request for a COA on all other issues. We also **DENY** as moot Mr. Meeks's motion to proceed *in forma pauperis*.

## I.    Background

The relevant facts, which are taken from the thorough recitation by the Kansas Supreme Court in *State v. Meeks*, 88 P.3d 789, 791-92 (Kan. 2004), are as follows. On August 21, 2001, Mr. Meeks confronted the decedent, James Green, at a friend's home in Kansas City, Kansas, where Mr. Green was accompanied by four other people. Mr. Meeks demanded an apology from Mr. Green regarding a prior incident in which Mr. Green had shut Mr. Meeks's hand in a door. When Mr. Green refused to apologize, Mr. Meeks challenged him to a fight outside and Mr. Green reluctantly agreed. All those present in the home also went outside to witness the fight. After fighting for approximately five minutes, Mr. Green

-2-

stopped, telling Mr. Meeks that he was tired and that they did not need to fight. Mr. Meeks continued to attempt to engage Mr. Green in a fight, and as Mr. Green started to walk away, Mr. Meeks pulled out a handgun and began chasing Mr. Green. Mr. Meeks fired approximately five to six shots at Mr. Green, including shooting him in the chest. Mr. Meeks then ran from the scene and Mr. Green fell to the street.

Officer Terrance Hall was the first police officer at the scene, arriving approximately ten minutes after the shooting. He asked Mr. Green who shot him, and Mr. Green answered "Meeks shot me." By 9:22 p.m., Mr. Green was unconscious, and he was pronounced dead by 10:47 p.m. from a gunshot wound.

At trial, Mr. Meeks's theory of defense was that he had been at a nightclub, called Club Uptown, the night of the murder. His sister, Ra'meka Meeks, testified that she went to Club Uptown with Mr. Meeks and others sometime around August 2001. Mr. Meeks then testified that it had been Tuesday, August 21, 2001. However, the owner and manager of Club Uptown, Norma Harris, testified as a rebuttal witness that before August 28, 2001, Club Uptown was not open on Tuesdays. She also testified that the club's video surveillance system was not in place until the end of January 2002. Ms. Harris provided summaries of liquor purchases during various months to confirm that the club was not open on that night.

The jury convicted Mr. Meeks of first-degree premeditated murder and the

trial court sentenced him to life without eligibility of parole for 25 years.

Mr. Meeks appealed to the Kansas Supreme Court. On direct appeal, Mr. Meeks argued that: (1) the trial court erred by allowing the admission of the victim's statement into evidence; (2) the trial court abused its discretion in denying his request for a continuance based on the allegedly surprising change in Ms. Harris's testimony; (3) the trial court abused its discretion in permitting the jury to hear an entire 911 call because its prejudice outweighed its probative value; (4) the cumulative effect of trial errors denied him a fair trial; and (5) there was insufficient evidence that the murder was premeditated. The Kansas Supreme Court upheld his conviction.

Mr. Meeks then filed for state post-conviction relief alleging ineffective assistance of counsel. After an evidentiary hearing, the state trial court denied the motion. The Kansas Court of Appeals affirmed, and the Kansas Supreme Court denied review.

Mr. Meeks then filed this federal habeas petition. He alleged that: (1) his confrontation rights were violated by the admission of the victim's hearsay statement; (2) his due process rights were violated by the denial of his request for continuance when Ms. Harris allegedly changed her testimony; (3) his due process rights were violated by the admission of a 911 call into evidence; (4) there was insufficient evidence to support his conviction; and (5) he had received ineffective assistance of counsel. The district court denied the petition in its

-4-

entirety. Mr. Meeks now appeals the issue for which a COA was granted by the district court, whether his confrontation rights were violated by the admission of the victim's statement, and he seeks a COA for the remaining issues. The district court granted Mr. Meeks's request to proceed *in forma pauperis*.

## II. Mr. Meeks Is Not Entitled To Habeas Relief On His Confrontation Claim

### A. Standard of Review

Because the Kansas Supreme Court adjudicated this claim on its merits, Mr. Meeks is entitled to federal habeas relief only if he can establish that the state court's determination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). "In determining whether the decision was contrary to or unreasonably applied clearly established federal law, we review the district court's legal analysis of the state court decision de novo." *Smith v. Workman*, 550 F.3d 1258, 1265 (10th Cir. 2008), *cert. denied*, 130 S. Ct. 238 (2009). "State court determinations of fact shall be presumed to be correct unless the presumption is rebutted by clear and convincing evidence." *Id.* (internal quotation marks omitted).

**B.      Discussion**

Mr. Meeks contends that his confrontation rights under the Sixth Amendment were violated when the trial court admitted the victim's statement, "Meeks shot me," into evidence. The trial court admitted the statement under a state statutory exception to the hearsay rule for contemporaneous statements.[1] On direct appeal, shortly after the Supreme Court decided *Crawford v. Washington*, 541 U.S. 36 (2004), the Kansas Supreme Court held that the statement was still admissible under *Crawford* pursuant to the forfeiture by wrongdoing doctrine because the defendant shot and killed the victim. *Meeks*, 88 P.3d at 793–94. The court did not determine whether the victim's statement was testimonial because it held that Mr. Meeks forfeited any right to confrontation by killing the witness.[2]

---

[1]      As the Kansas Supreme Court explained:

> That statutory hearsay exception requires that the declarant be unavailable and the statement be made at a time when the declarant had recently perceived the matter, while the declarant's recollection was clear, and that the statement was made in good faith prior to the commencement of the action and with no incentive to falsify or distort.

*Meeks*, 88 P.3d at 793 (citing Kan. Stat. Ann. § 60-460(d)(3) (Supp. 2003)).

[2]      The court also noted that, because the trial court had admitted the statement under a statutory hearsay exception, the trial court did not determine that the reason Mr. Green could not testify was because Mr. Meeks killed him. *Meeks*, 88 P.3d at 794. But, reasoned the court, "[o]ur review of the transcript . . . reveals that the court did consider Green had been shot in the chest from a range of 4 to 6 feet; that Green was dead; and that at least four witnesses were present when Green told the officer, 'Meeks shot me.' Scant evidence was presented to

(continued...)

-6-

*Id.*

Shortly after Mr. Meeks filed his federal petition, the United States Supreme Court decided *Giles v. California*, __ U.S. __, 128 S. Ct. 2678 (2008). In that case, the Court held that the Confrontation Clause did not allow testimonial statements by a murder victim under the doctrine of forfeiture by wrongdoing unless the defendant specifically intended to silence the victim to prevent his testimony. *See id.* at 2683, 2693. The district court held that the new rule announced in *Giles* could not be applied retroactively on collateral review. Under *Teague*'s retroactivity principles, the court reasoned, the *Giles* rule did not qualify as a substantive new rule or a watershed change in criminal procedure. *See Teague v. Lane*, 489 U.S. 288, 310–11 (1989). For substantially the same reasons set forth by the district court, we agree. *Cf. Whorton v. Bockting,* 549 U.S. 406, 416–21 (2007) (holding that *Crawford* did not apply retroactively under *Teague*).

A new constitutional rule generally is not applicable retroactively on collateral review. *See Teague*, 489 U.S. at 311. One exception, not applicable here, is for substantive rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* (internal quotation marks omitted). The second exception applies

---

[2](...continued)
the contrary." *Id.* The court therefore held that the issue had been proven by a preponderance of the evidence. *Id.*

to new procedural rules. *Id. Giles* announced such a new rule of criminal procedure because it explicitly contradicted the Court's earlier acceptance of the forfeiture by wrongdoing doctrine in *Crawford. See Whorton*, 549 U.S. at 416 ("The explicit overruling of an earlier holding no doubt creates a new rule." (internal quotation marks omitted)); *see also id.* at 417 ("[I]t is clear and undisputed that the [*Crawford*] rule is procedural and not substantive . . . ."). Under this exception, such a new rule cannot be applied on collateral review unless it is a "'watershed rule[] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks*, 494 U.S. 484, 495 (1990) (quoting *Teague*, 489 U.S. at 311). To satisfy this "extremely narrow" requirement, "the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction" and "the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton*, 549 U.S. at 417–18 (internal quotation marks omitted). The Supreme Court determined that *Crawford* did not meet this high standard. *Id.* at 421. It ineluctably follows that the new rule announced in *Giles*—that mined the vein established by *Crawford*—also fails to meet the standard.[3] *Cf. id.* at 418–21; *cf. also id.* at 418 ("[I]n the years since *Teague*, we have rejected every

---

[3]    As Appellees aptly state: "Because *Giles*' rule is at best subsidiary to *Crawford*'s rule, it follows that if *Crawford*'s rule satisfied neither criteria, neither does *Giles*'." Aplee. Br. at 15.

claim that a new rule satisfied the requirements for watershed status.").[4]

Moreover, we agree with the district court that the Kansas Supreme Court's decision that the forfeiture by wrongdoing doctrine remained valid after *Crawford* was not contrary to or an unreasonable application of clearly established federal law. As the Kansas court noted, *Crawford* explicitly stated that the Supreme Court continued to accept the forfeiture by wrongdoing equitable exception to the hearsay rule. *See Crawford*, 541 U.S. at 62. And before *Giles*, there was no established Supreme Court precedent to the contrary. We therefore deny Mr. Meeks's petition on the ground that his rights under the Confrontation Clause were violated.

## III. Mr. Meeks Is Not Entitled To A COA For His Remaining Claims

### A. Standard of Review

Issuance of a COA is jurisdictional. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). In other words, a state prisoner may appeal from the denial of federal habeas relief only if the district court or this court first issues a COA. 28 U.S.C. § 2253(c)(1)(A); *Montez v. McKinna*, 208 F.3d 862, 867 (10th Cir. 2000). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make that showing, a petitioner must demonstrate "that reasonable jurists could debate

---

[4] *Gideon v. Wainwright*, 372 U.S. 335 (1963), is the only case the Court has found to qualify under the procedural exception to the general retroactivity bar. *Whorton*, 549 U.S. at 419.

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

**B.    Discussion**

We now turn to the issues for which Mr. Meeks seeks a COA:  the denial of a continuance; the admission of a 911 tape; the alleged insufficiency of the evidence to support his conviction; and the alleged ineffectiveness of his trial counsel.  For substantially the same reasons set forth by the district court, we conclude that Mr. Meeks has failed to demonstrate that reasonable jurists could debate the district court's rejection of his constitutional claims.  We briefly address each claim in turn.

**1.    The Denial Of A Continuance Did Not Violate Due Process**

Mr. Meeks argues that his due process rights were violated when Ms. Harris, the owner and manager of Club Uptown, purportedly changed her testimony and his resulting request for a continuance was denied.  He had expected her to testify that the club was open on the night of the murder; defense counsel also allegedly had requested a videotape from the club's surveillance system but had been told that the tape had been erased.  When the state called Ms. Harris to testify, she instead testified that the club had not been open on that night and that the video system was not yet in place at that time.  Defense counsel

-10-

cross-examined her on these issues, and then requested a continuance, which was denied.

"[W]hen a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion, but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Case v. Mondragon*, 887 F.2d 1388, 1396 (10th Cir. 1989) (internal quotation marks omitted). Our focus is on the "need for a continuance and the prejudice or lack of prejudice resulting from its denial, in the context of a fundamental fairness evaluation." *Id.* at 1397.

On direct appeal, the Kansas Supreme Court held that the trial court did not abuse its discretion in denying Mr. Meeks's request for a continuance, finding that not only had Mr. Meeks been able to cross-examine Ms. Harris, but he also had the ability to subpoena other witnesses theoretically to support his alibi. *Meeks*, 88 P.3d at 795–96. As a result, the district court held that Mr. Meeks's "need for a continuance was [not] so high that it prejudiced his defense" and that "[t]he failure to grant a continuance did not violate established federal law." R., Vol. I, Doc. 12, at 14 (Dist. Ct. Mem. & Order, filed Apr. 9, 2009). We cannot conclude that reasonable jurists could debate the correctness of the district court's resolution of this issue.

### 2. Admission Of The Entire 911 Call Was Not Fundamentally Unfair

Mr. Meeks also alleges that his due process rights were violated when the trial court admitted the entire 911 call made by a witness who called police after hearing the shooting. He contends that the call was unduly prejudicial because it contained screaming and crying in the background and had no probative value.[5]

"We may not provide habeas corpus relief on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted). Here, Mr. Meeks has failed to establish that the admission of the entire 911 tape rendered his trial fundamentally unfair. We agree with both the Kansas Supreme Court and the district court, who concluded that the probative value of the tape, which conveyed what was going on at the scene and corroborated the testimony of several witnesses, was not outweighed by any prejudice.

### 3. There Was Sufficient Evidence To Support The Conviction

Mr. Meeks further argues that there was insufficient evidence to demonstrate that he committed first-degree murder (that is, he intended to shoot and kill the victim); instead, he contends that the shooting occurred in the heat of

---

[5] Mr. Meeks does not raise a Confrontation Clause challenge to the 911 call on collateral attack and the Kansas Supreme Court rejected any argument he might have made on direct appeal. *See Meeks*, 88 P.3d at 797.

passion.

In assessing an insufficiency of the evidence claim on habeas, we must defer to the fact-finding role of the jury. Thus, evidence of guilt is sufficient if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted). When a habeas petitioner's insufficiency of the evidence claim has been addressed in state court, § 2254(d) requires an additional layer of deference. *See Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007). Relief may not be granted unless the state court's application of the *Jackson* standard was objectively unreasonable. *See id.* The Kansas Supreme Court found there was sufficient evidence for the jury to have found premeditation because Mr. Meeks sought out the victim at another's house, insisted on fighting him, refused to stop fighting, pulled out a handgun and chased the victim, and then fired five or six shots at the victim. The district court concluded that "the Kansas Supreme Court's decision is a reasonable application of the law as it noted the essential elements for premeditated murder and found that a rational fact finder could have determined that these elements had been met." R., Vol. I, Doc. 12, at 17. Furthermore, with that understanding of the thoroughness and reasonableness of the state court's conclusion, the district court also noted that to the extent that Mr. Meeks also attempted belatedly to challenge elements of the murder conviction

beyond the premeditation element, his challenge must fail. We conclude that reasonable jurists could not debate the correctness of the district court's resolution of Mr. Meeks's insufficiency of the evidence challenge.

### 4. Mr. Meeks Was Not Denied Effective Assistance Of Counsel

Finally, Mr. Meeks contends that he was denied the effective assistance of counsel. Mr. Meeks offers no analysis for this argument in his application for a COA, but in his habeas petition he explained that counsel was ineffective because counsel failed to interview and call Jason Hawkins as an alibi witness and failed to properly prepare his sister, Ra'meka, prior to her testimony.

Under *Strickland*, counsel provides ineffective assistance when his representation does not meet "an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The state trial court held a hearing on this issue and concluded that counsel was not deficient. The Kansas Court of Appeals then applied an identical standard to that in *Strickland* and concluded that counsel was not ineffective in failing to subpoena Mr. Hawkins. Counsel testified that he spoke with Mr. Hawkins and that "he had no useful information about Meeks' whereabouts on the date of Green's murder. Hawkins further stated he was at home at the time of the shooting. . . . Hawkins could not

-14-

clearly recall the events of the night of the shooting . . . ." *Meeks v. State*, No. 95,835, 2007 WL 570261, at *2 (Kan. Ct. App. Feb. 23, 2007) (per curiam). The court also concluded that counsel had "thoroughly investigated Ra'meka's possible testimony prior to trial." *Id*. at *3. Counsel had spoken with her on three occasions and "[o]n each of these occasions, Ra'meka was unable to recall the exact date she went to the Club Uptown with Meeks. In all other respects, Ra'meka's testimony supported Meeks' alibi." *Id*. We conclude that reasonable jurists could not debate the district court's conclusion that "[t]here is no evidence that the appellate court's decision was contrary to clearly established law or an unreasonable application of law." R., Vol. I, Doc. 12, at 19. Accordingly, we deny Mr. Meeks's request for a COA.

## IV. Conclusion

For the reasons discussed above, we **DENY** Mr. Meeks's habeas petition on the merits of his Confrontation Clause claim. We further **DENY** a COA on all other issues and, as to those issues, **DISMISS** Mr. Meeks's appeal. We further **DENY** as moot Mr. Meeks's motion to proceed *in forma pauperis*; the district court has already granted that motion.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

-15-